2022 IL App (1st) 210254-U

No. 1-21-0254

Order filed June 23, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 8586 |
| | ) | |
| ROBERT KING, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction and sentence are affirmed where: (1) defendant was proved guilty beyond a reasonable doubt of armed habitual criminal, (2) defendant failed to establish an ineffective assistance claim regarding trial counsel's failure to file a motion to suppress evidence, and (3) the trial court did not abuse its discretion in sentencing defendant to 11 years' imprisonment.

¶ 2    Defendant Robert King appeals his conviction for armed habitual criminal and his sentence

of 11 years' imprisonment. On appeal, defendant argues that the State failed to prove him guilty

of armed habitual criminal beyond a reasonable doubt, that trial counsel was ineffective for failing

to file a motion to suppress evidence, and that his 11-year sentence was the result of an abuse of discretion.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Defendant was charged by information with one count of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)), one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)), and two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1-2)(3)(C) (West 2014). Prior to trial, defendant filed a motion to suppress evidence alleging that his arrest and detention violated the first and fourteenth amendments of the United States Constitution. Defendant later withdrew the motion and demanded a bench trial.

¶ 6    At trial, Chicago Police Sergeant Shawn Rellinger testified that he was part of a three-car detail in the proximity of 7744 North Paulina Street on May 3, 2014, at around 1:00 a.m. The detail was present because of "numerous shootings" in the area. Gunshots rang out approximately a block and a half north of Rellinger's location. Rellinger then proceeded north on Paulina. Rellinger saw individuals running in different directions. Rellinger stopped one individual who was running towards him and determined that the individual was not involved in the shooting.

¶ 7    Rellinger then had to detour into the alley because a vehicle was blocking his route on northbound Paulina. Rellinger exited the alley and saw defendant walking toward him. Defendant was walking while others were running in fear. Rellinger decided to stop defendant, but defendant

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

did not obey Rellinger's verbal commands. When Rellinger exited his vehicle, defendant took off running.

¶ 8    Rellinger gave chase and called his actions in over the radio. As Rellinger chased defendant, he noticed that defendant had an object in his left hand and was holding his pants up with his right hand. Defendant then tossed the object in his left hand and dropped something from his right hand. Rellinger was approximately 10-15 feet from defendant when he discarded the two items. The item tossed from defendant's left hand sounded like glass when it hit the ground. Rellinger later saw a bottle in that location. The item defendant dropped with his right hand was a "dark object" that made a "metallic sound" when it hit the ground. After discarding the two items, defendant's pants fell and he tripped and fell to the ground.

¶ 9    Rellinger then jumped on top of defendant to detain him. Defendant resisted Rellinger's efforts. Assistance arrived seconds later and the officers were able to get defendant under control. After defendant was under control, Rellinger was informed that another officer recovered a firearm from right behind Rellinger's and defendant's feet.

¶ 10    On cross examination, Rellinger admitted that he could not testify that the object dropped from defendant's right hand was a gun. The gun was not subjected to any fingerprint or DNA testing.

¶ 11    Chicago Police Sergeant Escalante[2] testified that he and a partner responded to Sergeant Rellinger's call for assistance. Escalante observed Rellinger and another officer attempting to place defendant into custody. Escalante observed a handgun inches from defendant's feet. Escalante recovered the firearm and identified People's Exhibit 1 as the firearm he recovered.

_____

[2] Sergeant Escalante's first name does not appear in the record.

¶ 12    The parties then stipulated that defendant had prior convictions of residential burglary and burglary. The parties also stipulated that on May 3, 2014, defendant did not possess a valid Firearm Owner's Identification card or a Conceal Carry License. The trial court denied defendant's motion for a directed verdict.

¶ 13    Defendant testified that in the early morning hours of May 3, 2014, he went to multiple corner stores to buy cigarette papers and a pint of vodka. Defendant purchased vodka at the first corner store and then cigarette papers at a second corner store around 1 a.m. Defendant then proceeded down Juneway Terrace. Defendant parked his car, exited, and walked to the sidewalk. Defendant then heard screeching tires and saw an unmarked blue and white truck. Defendant saw Sergeant Rellinger in the truck with a white shirt on.

¶ 14    Defendant testified that he was only carrying his car keys. Defendant was holding his pants up with his right hand because he was not wearing a belt. The liquor bottle was in his back pocket. Defendant testified that he did not have a gun. Defendant testified that Rellinger was "cussing and calling [him] names" and telling defendant to come to him. Rellinger was about 20 feet away and defendant told him "no," "I don't think so," and to "have a goodnight." Defendant then kept walking.

¶ 15    Around a minute later, Rellinger came from between some cars and tried to clothesline[3] defendant. As Rellinger tried to tackle defendant, defendant braced himself and asked, "Sarge, what's wrong? What happened, man? What's the problem?" Rellinger then accused defendant of shooting up a party. Rellinger also hit defendant in the back of his ear with an object. Rellinger

_____

[3] To "clothesline" is to "knock down (a football player) by catching by the neck with an outstretched arm." Merriam-Webster's Collegiate Dictionary 217 (10th ed. 1998).

then took defendant's pants and boxers down to his ankles. Rellinger searched defendant, taking defendant's money, wallet, keys, and his iPhone out of his pockets. Defendant then explained injuries to his face and shoulder, which were the result of Rellinger pushing him to the ground and stomping on his shoulder. Defendant testified that he had never seen the recovered firearm.

¶ 16    The trial court found defendant guilty on all counts. The trial court found that the two officers testified "clearly and convincingly." The trial court rejected defendant's version of events. The trial court merged all counts into the armed habitual criminal conviction and sentenced defendant to 11 years' imprisonment. Defendant was sentenced on March 30, 2017. Defendant did not file a motion to reconsider sentence, but he did file a notice of appeal on the day he was sentenced.

¶ 17    Defendant filed a postconviction petition in August 2017. On appeal from the second-stage dismissal of his petition, the parties became aware that defendant's March 2017 notice of appeal was not properly transmitted. Defendant's notice of appeal was then properly transmitted. This is a direct appeal of the trial court's judgment.

¶ 18                            II. ANALYSIS

¶ 19    Defendant first argues that the State failed to prove that he possessed a firearm beyond a reasonable doubt. Defendant points out that no eyewitness testified that they saw defendant with the firearm. Defendant argues that Sergeant Rellinger could not even offer a general description of the object in defendant's hand and never described the size or shape of the object, only stating that it was dark. Defendant also notes that no physical or forensic evidence connected him to the firearm. The State responds that Sergeant Rellinger's testimony established that defendant had actual possession of the firearm in his right hand while fleeing. The State cites defendant's

"headlong flight" and the firearm's proximity to defendant after he fell as additional facts supporting a conclusion that defendant possessed the firearm.

¶ 20    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 21    Defendant was convicted of one count of armed habitual criminal in violation of 720 ILCS 5/24-1.7(a) (West 2014).  To sustain its burden of proof on the armed habitual criminal charge, the State needed to prove that defendant possessed a firearm after having been convicted two or more times of certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2014). The parties stipulated that defendant had prior convictions of residential burglary and burglary. Defendant does not contest that those two convictions sufficed to prove that he had twice been convicted of qualifying offenses. Thus, the sole issue on appeal is whether defendant possessed a firearm.

¶ 22    "Possession of contraband may be actual or constructive." *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 31. "Actual possession is the exercise by the defendant of present personal

dominion over the [contraband]" and "exists when an individual exercises immediate and exclusive dominion or control over the [contraband]." *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000). "To establish constructive possession, the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area where the firearm was found." *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10. "The trier of fact may rely upon reasonable inferences of possession and knowledge." *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25. "Circumstantial evidence may be used to prove possession and knowledge." *Id*.

¶ 23    The State proved defendant guilty beyond a reasonable doubt. It is true that "[m]ere proximity is not sufficient evidence of actual possession." *Schmalz*, 194 Ill. 2d at 81. But here there was proximity plus corroboration. A comparison to cases in this area establishes that there was sufficient evidence of possession to prove defendant's guilt beyond a reasonable doubt.

¶ 24    In *People v. Sims*, this court reversed a defendant's conviction because the State had not proven possession beyond a reasonable doubt. *People v. Sims*, 2013 IL App (1st) 121431, ¶ 16. The defendant had been seen exiting a house where a firearm was later found. *Id*. ¶ 13. The defendant did not live at the residence, had not been seen in the room where the firearm was found, and no physical evidence connected the defendant to the firearm. *Id*. ¶ 16. Under these facts, this court could not conclude that the State had proved the "defendant had knowledge of the presence of the firearm or exercised immediate and exclusive control over the area where the firearm was found." *Id*.

¶ 25    Similarly, in *People v. Wright*, this court reversed the defendant's conviction based on a lack of proof of possession. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 26. There, the defendant

and another individual fled downstairs into a basement as police began to execute a search warrant. *Id.* at ¶¶ 6, 26. The police gave chase and the other individual fell over defendant as the two went down the stairs. *Id.* ¶ 26. A firearm was recovered from underneath the defendant at the bottom of the stairs. *Id.* Along with defendant and the individual who fell over him, there were three other people in the basement. *Id.* No witness "saw a gun in [the] defendant's hands or noticed him make any actions that would indicate that [the] defendant was discarding a gun." *Id.* ¶ 26. The defendant did not live at the residence. *Id.* This court held that the State failed to provide sufficient evidence of the defendant's guilt because it did not prove the defendant constructively possessed the gun attributed to him. *Id.*

¶ 26      In contrast, in *People v. Anderson*, the Fourth District held that sufficient evidence existed to support a finding of possession beyond a reasonable doubt. *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 36. There, the defendant fled after being confronted by police. *Id.* ¶ 4. The defendant's hands were tucked inside towards the front of his waistband as he fled from the police. *Id.* ¶ 33. The defendant was ultimately apprehended, and "while he was still on the ground being secured, the gun was found two to three feet away." *Id.* The court concluded that it was "reasonable for the jury to believe [the] defendant was armed with the handgun while he was being pursued by the police." *Id.*

¶ 27      The facts here are much closer to *Anderson*. In fact, the State here presented a stronger case than in *Anderson*. There was not only the flight and the proximity of the weapon to where defendant was apprehended, but Sergeant Rellinger specifically testified that moments before defendant fell, he discarded a "dark object" that made a "metallic sound" as it hit the ground. See *People v. Howard*, 29 Ill. App. 3d 387, 389 (1975) (explaining that dominion can be established

where a defendant is "seen throwing [the contraband] away"); contra *Wright*, 2013 IL App (1st) 111803, ¶ 26 (explaining that no witness saw the defendant "make any actions that would indicate that [he] was discarding a gun"). Defendant fled from police, discarded a "dark object" that made a "metallic sound" when hitting the ground, and was apprehended inches away from a handgun. The totality of these circumstances support the reasonable inference that defendant possessed a firearm as he ran from police. Thus, he was proven guilty of armed habitual criminal beyond a reasonable doubt.

¶ 28    Defendant's next argument is that trial counsel was ineffective because trial counsel failed to file a motion to suppress evidence "where the police stopped [defendant] without reasonable suspicion and his flight from the police did not convert the encounter into a valid and legal stop." Defendant argues that the firearm was discovered while he was seized and after his flight. The State responds that any motion to suppress would have been futile because defendant dropped the firearm prior to any seizure.

¶ 29    Claims of ineffective assistance of counsel are evaluated under the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Under *Strickland*, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Albanese*, 104 Ill. 2d at 52.

¶ 30    Under the first prong of *Strickland*, a defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997).

Counsel's performance is measured using an objective standard of competence under prevailing professional norms. The defendant must overcome the strong presumption that the challenged action or lack of action might have been the product of sound trial strategy. *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996).

¶ 31    Under the second prong of *Strickland*, the defendant must establish prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Patterson*, 2014 IL 115102, ¶ 81. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *People v. Hale*, 2013 IL 113140, ¶ 18.

¶ 32    Defendant's ineffective assistance claim fails because a motion to suppress would have been futile. "[T]he failure to file a motion to suppress or the withdrawal of such a motion prior to trial does not establish incompetent representation when it turns out that the motion would have been futile." *People v. Givens*, 237 Ill. 2d 311, 331 (2010). The merits of a motion to suppress in this case can be resolved by answering two questions: (1) When was defendant seized? and (2) Did defendant discard the firearm prior to the point he was seized? We conclude that defendant was seized when Sergeant Rellinger jumped on him, and that defendant discarded the firearm in the moments before he was seized. Because the firearm was discarded prior to any seizure, the fourth amendment was not implicated and a motion to suppress would have been futile.[4]

¶ 33    The fourth amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

---

[4] The parties also dispute whether defendant's flight and the surrounding circumstances provided reasonable suspicion for Sergeant Rellinger to detain defendant. However, we can resolve the merits of defendant's ineffective assistance claim without reaching that issue.

A seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Generally, a "person has been seized within the meaning of the fourth amendment only when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." *People v. Thomas*, 198 Ill. 2d 103, 111 (2001).

¶ 34 The United States Supreme Court has resolved whether a seizure occurs when a defendant takes flight instead of submitting to a show of authority. In *California v. Hodari D.*, the Court stated the issue and resolution as follows: "The narrow question before us is whether, with respect to a show of authority ***, a seizure occurs even though the subject does not yield. We hold that it does not." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The Court applied that holding to a situation very similar to the situation in this case, where the Court stated that a seizure does not occur when an officer yells " 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id*. The respondent in *Hodari D*. fled in the face of an officer's show of authority, discarding a baggie of cocaine before being tackled. *Id*. at 629. The Court held that the "cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.*

¶ 35 Illinois courts have applied *Hodari D*. on multiple occasions. See *People v. Thomas*, 198 Ill. 2d 103, 112 (2001) ("Here, the defendant was not seized by Officer Melton's attempted roadblock because he refused to halt and, instead, chose to run. He was seized only when physical force was applied after he was caught."); *People v. Cherry*, 2020 IL App (3d) 170622, ¶ 30 ("In cases where a defendant flees immediately from an attempt to effectuate a stop or seizure, such as *Hodari D*. or *Thomas*, it is clear that there has been no submission to authority and thus no

fourth amendment encounter."). Our supreme court has extended *Hodari D.* to situations where an initial illegal seizure occurs followed by a defendant's flight wherein contraband is discarded. *People v. Henderson*, 2013 IL 114040, ¶ 44. In that situation, assuming the officer's initial misconduct is not flagrant, the flight interrupts the causal connection between the initial illegality and the discovery of the contraband. *Id.* at ¶ 50. Thus, the discovered contraband is not the product of a fourth amendment violation. *Id.*

¶ 36    Here, there was no seizure until defendant fell to the ground and Sergeant Rellinger jumped on him. By that time defendant had already discarded the firearm later located inches from his feet. Sergeant Rellinger clearly testified on this point, contrary to defendant's assertion that "there was no evidence here that [defendant] abandoned or relinquished the gun during the chase or prior to the seizure." The following colloquy occurred during Sergeant Rellinger's direct examination:

"Q. After the defendant tossed the item, dropped the item, what happened next?

A. His pants fell down, and he tripped and fell to the ground."

Rellinger's testimony, which the trial court found credible, established that defendant dropped the firearm before he fell to the ground. Thus, under *Hodari D.* and *Thomas*, there was no seizure when the gun was discarded and the fourth amendment was not implicated. Contra *People v. McClendon*, 2022 IL App (1st) 163406, ¶ 27 (holding that a motion to suppress should have been granted where the defendant "dropped the gun" after he "submitted to the officers' authority, completing the seizure").

¶ 37    Finally, in reply defendant argues that the evidence "suggests, at most, that [the firearm] fell from his waist or he dropped it when he tripped." Defendant notes that the firearm was found

inches from his feet, negating any claim that he intended to abandon the firearm. Defendant concludes that the series of events "does not equate to an affirmative or intentional abandonment."

¶ 38    Defendant cites no authority distinguishing between the intentional relinquishment or unintentional dropping of contraband during flight. Ill. S. Ct. R. 341(h)(7), (eff. October 1, 2020) (explaining that the argument section of the brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). In our view, it does not matter whether contraband is discarded intentionally or whether the contraband is accidentally dropped during flight. In either scenario, the defendant has lost control of the contraband prior to seizure, which is the moment when the fourth amendment is implicated. Thus, even assuming for the sake of argument that defendant accidentally dropped the firearm as he fell, the fourth amendment was not implicated at that time because defendant tripping, falling, and losing possession of the firearm was not caused by Sergeant Rellinger's "physical force or show of authority." *Terry*, 392 U.S. at 19 n.16. As a result, trial counsel was not ineffective for filing what would have been a futile motion.

¶ 39    Defendant's final argument is that his 11-year sentence resulted from an abuse of the trial court's discretion.  Defendant argues that the "sentence is disproportionate to the nature of the offense" where the underlying act was "simple gun possession" and defendant "did not cause or threaten harm to anyone" or "use the firearm in a dangerous manner." Defendant also points to the age of his criminal history, his employment, and the support of his family. Defendant asks that we reduce his sentence to a more appropriate term or remand for resentencing.

¶ 40    The State responds that defendant forfeited his sentencing claim because he failed to object at the sentencing hearing or file a post-sentencing motion. The State further argues that the trial

court "properly reviewed and considered all of the mitigation submitted by defendant and imposed a sentence 19 years below the maximum." The State concludes that the trial court did not abuse its discretion.

¶ 41    The Illinois Constitution requires that sentences reflect the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. A trial court's sentencing decision is entitled to great deference, and it will not be disturbed on appeal unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence will generally not be found to be an abuse of discretion if it is within the permissible statutory sentencing range for the offense, unless "it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). The sentence imposed is entitled to great deference and weight because a trial court is in a better position to consider the defendant's credibility, character, demeanor, mentality, age, social environment, and habits. *Stacey*, 193 Ill. 2d at 209. Because it is the trial court's responsibility to weigh the competing factors, we cannot substitute our judgment for that of the trial court simply because we might balance the factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991).

¶ 42    Defendant was sentenced on one count of armed habitual criminal, which is a Class X felony. 720 ILCS 5/24-1.7(b) (West 2014). The sentencing range for a Class X felony is "not less than 6 years and not more than 30 years." 730 ILCS 5/5-4.5-25(a) (West 2014). Defendant's 11-year sentence is presumed proper because it falls within the permissible statutory range. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 47.

¶ 43 Defendant neither objected to the trial court's oral sentencing order nor did he file a motion to reconsider sentence. "The failure to file such a motion has been held to constitute a waiver of sentencing issues on appeal because it denies the circuit court the opportunity to correct any error that may have occurred and instead burdens the appellate court with the processing of potentially needless appeals." *People v. Gomez*, 247 Ill. App. 3d 68, 70 (1993). Defendant recognizes this waiver and asks this Court to review the issue for plain error and ineffective assistance of counsel.

¶ 44 Plain error is a narrow and limited exception to the general forfeiture rule. The exception is to be invoked only where a clear or obvious error occurred and: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs, defendant bears the burden of persuasion. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step of plain error review is determining whether a clear or obvious error occurred.

¶ 45 Defendant faces an uphill battle in rebutting the presumption that his sentence is proper where no record was made below to establish an abuse of discretion. Defendant also faces numerous legal propositions that weigh against his claim. First, "the trial court is presumed to have considered the mitigating evidence contained in the record." *People v. Means*, 2017 IL App (1st) 142613, ¶ 16. On top of the general presumption, the trial court here expressly stated that it considered the "factors in aggravation and mitigation, the information in the presentence investigation, the arguments, [and] the statement made by the defendant." All the information

defendant points to as mitigation on appeal was presented to the trial court and the trial court specifically stated that it considered the evidence in mitigation.

¶ 46 Second, as a corollary, a defendant must make an affirmative showing to establish that a trial court failed to consider evidence in mitigation. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 23. Here, defendant has not made that affirmative showing and, instead, defendant relies on the sentence itself to make his excessive sentence claim. However, "[w]here mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. Because the mitigating evidence was presented to the trial court, and nothing in the record says otherwise, we presume the trial court considered the mitigating evidence.

¶ 47 Finally, unable to point to any affirmative error in the trial court's sentence, defendant's argument boils down to a request that we reweigh the aggravating and mitigating evidence and reduce his sentence. We are prohibited from doing so. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000) ("[T]he reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently."). There was certainly evidence on both sides of the spectrum, and it was the trial court's duty to weigh that evidence. However, defendant's 11-year sentence, which is closer to the minimum than it is the middle of the range, is not "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54.

¶ 48 In short, we cannot find an abuse of discretion in the trial court's sentencing judgment. Without error, there can be no plain error. And because preservation of the sentencing issue would not have changed the outcome of the appeal, defendant has failed to establish an ineffective

assistance claim. See *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011) (explaining that without error a "defendant can establish neither plain error *** nor ineffective assistance of counsel").

¶ 49                                                III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 51    Affirmed.