2023 IL App (1st) 220916

SIXTH DIVISION
Filing Date: August 31, 2023

No. 1-22-0916

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
|        Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
|   v. | ) | |
| | ) | No. 14 CR 08586 |
| ROBERT KING, | ) | |
| | ) | The Honorable |
|        Defendant-Appellant. | ) | Joseph M. Claps, |
| | ) | Judge, Presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Robert King was convicted of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2014)) and sentenced to an 11-year prison term. His conviction and sentence were affirmed on direct appeal. *People v. King*, 2022 IL App (1st) 210254-U. Defendant filed a *pro se* postconviction petition on August 30, 2017, which was subsequently dismissed by the trial court on the State's motion on June 2, 2022. On appeal, defendant contends that his postconviction counsel rendered unreasonable assistance by failing

to present defendant's claims in the appropriate legal form, failing to overcome routine defenses to procedural bars, abandoning claims without explanation, failing to provide any supporting documentation for any of the claims, and indicating a general misunderstanding of the procedures governing postconviction proceedings. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The factual background for this case comes from defendant's direct appeal. *Id.* Briefly stated, defendant's arrest and subsequent trial stem from events that occurred on May 3, 2014, when he was arrested and charged with one count of AHC, one count of unlawful use of a weapon (UUW) by a felon, and two counts of aggravated unlawful use of a weapon (AUUW). Prior to trial, defendant filed a motion to suppress his arrest and detention under the first and fourteenth amendments of the United States Constitution, but later withdrew the motion and demanded a bench trial. Defendant's case proceeded to a bench trial in January 2017.

¶ 4                          A. Trial and Posttrial Proceedings

¶ 5    Defendant was represented by private counsel throughout his trial and initial posttrial proceedings. Briefly stated, the evidence presented at defendant's bench trial was that on May 3, 2014, near 1710 Juneway in Chicago, at approximately midnight, police responded to a call of shots fired. Officers arriving on the scene saw people running from the area. In contrast, defendant was seen walking calmly near the area and was asked to come to the car by Officer Rellinger. Defendant refused and said something that Rellinger could not hear, so Rellinger exited the vehicle. Defendant ran, and Rellinger chased him, after calling it in over the radio. Rellinger did not see anything in defendant's hands or bulging from his pockets or waistband before chasing him. After the chase began, Rellinger noticed that defendant was holding an object in his left hand and was holding up his pants with his right hand. He could not clearly

see defendant's right hand but, from approximately 10 to 15 feet away, Rellinger saw defendant toss something with his left hand and heard what sounded like glass when the object hit the ground. He then saw defendant "kind of dropping something with his right hand," which Rellinger described as a dark object that made a metallic sound. After discarding the two items, defendant's pants fell down below his knees, and he tripped. Rellinger jumped on top of him, and two other officers subsequently arrived to help subdue and cuff defendant. Officer Escalante recovered a gun from right behind Rellinger's and defendant's feet. However, at trial, Rellinger was not able to conclusively state that the dark object he saw in defendant's right hand was the firearm that was recovered. The gun was not sent for any fingerprint or DNA testing and was not photographed at the scene. The gun was a revolver and was unloaded. Officer Escalante kept the gun until he inventoried it at the 24th District police station.

¶ 6        The parties entered into a stipulation that defendant had two prior convictions: a conviction for residential burglary in case number 87 CR 16392-01 and a conviction for burglary in case number 87 CR 12446-01.

¶ 7        Defendant testified that he was married with four children and that he worked construction, doing interior drain tile for flooded basements. Defendant stated that May 2, 2014, was his wife's birthday and they celebrated together. Defendant helped his wife, who had multiple sclerosis, to bed around 11 p.m. Afterwards, defendant left to get cigarette papers and a pint of vodka. After going to a convenience store, defendant went to a relative's house on Juneway Terrace and parked his car. After exiting his car, defendant heard screeching tires and saw police officers in the car. One of the officers, subsequently identified as Officer Rellinger, said "[H]ey you, n***, you m***, come here." Defendant testified that Rellinger was "very aggressively" trying to get out of the vehicle, and defendant said, "[N]o, I don't think so, you

have a good night too." Suddenly, Rellinger tried to tackle him. When defendant asked what was going on, Rellinger said that defendant shot up a party. Defendant testified that he complied and got down on the ground, and Rellinger hit him on the back of the ear. Defendant explained that his booking photo would show that he was bruised: his bottom lip was busted, and his face was scraped up from Rellinger and other officers punching him and pushing his face into the concrete. Defendant stated that the officers pushed his pants and underwear down to his ankles. Other officers arrived and stated that he was the one who shot up the party. Defendant yelled that they should take him to the scene of the shooting to see if anyone would identify him or they should conduct a gun powder residue test. According to defendant, the officers laughed and put him in the back of a police car. Defendant stated that he was initially told that he was charged with resisting arrest and disorderly conduct and denied that he was ever shown a gun.

¶ 8    The trial court found that the case came down to a credibility issue between defendant and the testifying officers and found the officers' testimony more convincing. Defendant was subsequently found guilty of AHC; the other counts of UUW were merged into that offense.

¶ 9    A motion for new trial followed, contending that defendant was not proven guilty beyond a reasonable doubt; the verdict was against the weight of the evidence; defendant was denied due process and equal protection; the State failed to prove every material allegation of the offense beyond a reasonable doubt; the trial court erred in giving instructions on behalf of the State over defendant's objection[1]; defendant did not receive a fair and impartial trial; the court erred in overruling defendant's motion for directed verdict; the State made prejudicial,

---

[1]Defendant had a bench trial so there were no jury instructions.

inflammatory and erroneous statements in closing arguments designed to arouse the prejudices and passions of the jury[2] which prejudiced defendant's right to a fair trial; and the verdict was based on evidentiary facts that did not exclude every reasonable hypothesis consistent with defendant's innocence. That motion was denied on March 30, 2017, and defendant was sentenced to an 11-year prison term for AHC. During the sentencing hearing, the State argued in aggravation that the recovered firearm was loaded, although the record indicated that it was not loaded. Defendant's timely notice of appeal was filed the same day.

¶ 10                                    B. Direct Appeal

¶ 11        On appeal, defendant contended that the State failed to prove him guilty beyond a reasonable doubt that he possessed a firearm, trial counsel was ineffective for failing to file a motion to suppress evidence, and his 11-year sentence was an abuse of the trial court's discretion. Prior to our determination of the merits of defendant's direct appeal, we noted three procedural irregularities. First, defendant did not file a motion to reconsider sentence but filed his notice of appeal on the same day he was sentenced. *Id.* ¶ 16. Second, we noted that defendant filed the postconviction petition that is the subject of this current appeal in August 2017, while his direct appeal was pending. *Id.* ¶ 17. Lastly, during the appeal on the second stage dismissal of that postconviction petition, the parties became aware that defendant's March 2017 notice of appeal was not properly transmitted to this court. *Id.* Defendant's notice of direct appeal was then properly transmitted. *Id.*

¶ 12        This court affirmed defendant's conviction and sentence on direct appeal. *Id.* ¶ 3. With respect to defendant's reasonable doubt argument, we noted that defendant did not contest the

---

[2]Defendant had a bench trial.

stipulation that he had two prior convictions of residential burglary and burglary, leaving the sole issue whether defendant possessed a firearm. *Id.* ¶ 21. We found that there was sufficient evidence of possession to prove defendant's guilt beyond a reasonable doubt, based on defendant's flight, proximity of the weapon to where defendant was apprehended, and Rellinger's specific testimony regarding the discarded object making a metallic sound as it hit the ground. *Id.* ¶ 27. We concluded that the totality of those circumstances supported the reasonable inference that defendant possessed a firearm as he ran from police and, thus, he was proven guilty of AHC beyond a reasonable doubt. *Id.*

¶ 13 With respect to defendant's ineffective assistance of counsel claim, we found that a motion to suppress would have been futile because defendant was seized when Rellinger jumped on defendant and defendant discarded the firearm in the moments before he was seized. *Id.* ¶ 32. Because the firearm was discarded prior to seizure, we concluded that a motion to suppress would have been futile because the fourth amendment was not implicated. *Id.*

¶ 14 With respect to defendant's challenge to his 11-year sentence as an abuse of the trial court's discretion, we found that defendant's sentence was proper because it fell within the permissible statutory range. *Id.* ¶ 42. We further declined to apply plain error to defendant's claim because we could not find an abuse of discretion in the trial court's sentencing, based on the record, and preservation of the sentencing error would not have changed the outcome of the appeal, thus nullifying defendant's ineffective assistance of counsel argument on that basis as well. *Id.* ¶ 48.

¶ 15 C. Postconviction Proceedings

¶ 16    As noted above, while his direct appeal was pending, defendant filed his *pro se* postconviction petition on August 30, 2017.[3] In the *pro se* petition, defendant alleged that he was denied his rights under the fourteenth amendment in that his equal protection of the law was violated. Defendant also raised a fourth amendment claim of unreasonable search and seizure, due to the dispatch call indicating that someone dressed in red and black shot up a party. He also challenged the arresting officer's probable cause grounds to stop defendant (the exact wording is redacted), and the officer's claim that he saw defendant drop a black object to the ground, which was later alleged to be a "32 'unloaded' revolver that has [*sic*] not been fired recently." Defendant stated that he was raising constitutional issues under due process, equal protection, and unreasonable search and seizure because there was no dispatch recording, no witness to identify defendant, and no red or black articles of clothing in the record. The petition goes on to state that the trial court moved forward with a conviction for AHC (720 ILCS 5/24-1.7(A) (West 2014)) while disregarding that his qualifying felony convictions were 22 years prior and further that his conviction was invalid because the AUUW statute was found unconstitutional in *People v. Aguilar*, 2013 IL 112116. However, even defendant notes that he was not convicted of AUUW. He concludes that under the postconviction petition, these unknown facts would have been known to the trial court at the time of the judgment, and thereby would have changed the judgment entered, citing *People v. Steidl*, 142 Ill. 2d 204 (1991), as support. Defendant also raised reasonable doubt, based on the clothing reportedly worn by the offender and the absence of fingerprint or ballistic evidence, gunshot residue, and reports supporting the arresting officer's claim. He also claimed that his request for the video

[3]Defendant's *pro se* postconviction petition is partially redacted, so we will relate its contents here to the extent that we can. He also filed a petition for *habeas corpus* on the same date, but that is not part of this appeal.

was denied because it would have shown that he was innocent and further that the trial court violated his constitutional rights by sentencing him under the AHC statute and not the habitual criminal statute (730 ILCS 5/5-5-3(c)(2)(F) (West 2014)). Defendant requested an outright reversal of his convictions due to an "unconstitutional act that was not a law" and the denial of his constitutional rights. He also requested the appointment of counsel.

¶ 17    Defendant's case was set for status in September 2017, at which time it was docketed for second stage proceedings and the Public Defender's office was appointed to represent him. The case was continued to November 30, 2017, when Assistant Public Defender (APD) Camille Calabrese from the Legal Resources Unit appeared in court on defendant's behalf. She indicated that she had interviewed defendant's trial counsels and requested a continuance. The case was continued by agreement to January 16, 2018, for status.[4] The next order, on February 28, 2018, allowed a direct subpoena to the State's Attorney, pursuant to defendant's postconviction petition, for copies of the 911 tape, transcript, or reports in reference to the date defendant was arrested.

¶ 18    APD Calabrese filed an amended postconviction petition on defendant's behalf on August 23, 2018. In the amended petition, counsel challenged defendant's eligibility for conviction as an AHC because he did not have two separate convictions for qualifying felonies. Counsel argued that defendant had concurrent felonies that arose from a single plea entered on February 9, 1989, which amounted to a single transaction (although counsel did note that each plea was for a separate case number), and that defendant served a concurrent sentence on all four cases. Counsel further argued that the State's attorney erroneously represented that the 1988

[4]The next document in the record is an impound order, entered on July 6, 2017, for the black Smith & Wesson firearm that was used as evidence in defendant's trial.

residential burglary case was in addition to the other residential burglary and felony convictions that were part of the prior plea.

¶ 19     Next, counsel argued that defendant received ineffective assistance of counsel because trial counsel waived a presentence report (PSI), failed to demand certified copies of defendant's convictions that were elements of the offense, and failed to argue that defendant did not qualify as an AHC and should not have been sentenced as such.

¶ 20     The State filed a motion to dismiss defendant's postconviction petition on September 16, 2019, arguing that defendant's claims were refuted by case law, rebutted by the record, and insufficient as a matter of law and did not establish a substantial violation of his constitutional rights.

¶ 21     In response to defendants argument in the supplemental postconviction petition—that the entry of multiple guilty pleas and sentencing on the same day did not satisfy the predicate felonies as required by the AHC statute—the State maintained that defendant misapplied case law that dealt with the habitual criminal statute as opposed to the AHC statute because the two statutes treat predicate felonies differently. The State argued that this court had previously determined that the plain meaning of the term "times" did not indicate that the predicate convictions must occur (be entered) on separate days and that the plain language of the AHC statute does not contain any limiting language regarding the sequence or separate entry of convictions in *People v. Patterson*, 2018 IL App (1st) 160610, ¶¶ 28-29. The State concluded

that this court's decision in *Patterson* squarely rebutted the basis that defendant used in support of his claim.[5]

¶ 22    Next, the State addressed defendant's claim in his *pro se* petition that his fourth amendment right against search and seizure was violated and that no probable cause existed for his arrest. The State treated this argument as an ineffective assistance of counsel claim for failing to file a motion to suppress, but argued that defendant did not explain why it was unreasonable for his attorney to withdraw the suppression motion considering that (1) officers responded to a call of shots fired, (2) as the officers approached defendant for a field interview, he fled prior to being seized, and (3) officers observed a firearm in plain view near defendant's feet when his pants fell down. The State concluded that defendant's claim of no probable cause because no video existed and no civilian witnesses observed his arrest was defendant's own opinion, without independent corroborating evidence or legal authority regarding probable cause. The State also concluded that since probable cause existed, it was not unreasonable for defendant's trial counsel to withdraw the suppression motion. Thus, counsel was not ineffective.

¶ 23    With respect to defendant's *pro se* claim that the trial court violated his constitutional rights by sentencing him under the AHC statute and not the habitual criminal statute (730 ILCS 5/5-5-3(c)(2)(F) (West 2014)), the State contended that because defendant provided no legal authority for his assertion, his claim should be denied as a matter of law.

¶ 24    The State also addressed defendant's *pro se* claim that his constitutional rights were violated when the trial court found him guilty because there was no audio, video or written

___

[5]We note that APD Calabrese filed the supplemental postconviction petition on September 23, 2018, while this court's decision in *Patterson* was not rendered until December 14, 2018. Thus, counsel would not have had benefit of this court's decision when the supplemental petition was filed.

reports to corroborate the officers' claims. The State pointed to dialog at defendant's sentencing hearing regarding whether there might have been some video from a nearby building, where trial counsel stated that he inquired of the building's management and was told that the cameras did not loop that far back and save video, so there was no video per his investigation. The State argued that this argument was a challenge to the sufficiency of the evidence and was not properly raised in a postconviction petition, as defendant did not present any new evidence but merely disagreed with the trial court's determination.

¶ 25    With respect to defendant's *pro se* claim that his constitutional rights were violated because the AUUW statute was found unconstitutional, the State noted that defendant was convicted under the AHC statute and further that he had no right to possess a firearm as a convicted felon, as noted in *Aguilar*.

¶ 26    On September 20, 2019, the State filed a supplemental motion to dismiss defendant's postconviction petition. The State addressed the claim raised in the amended postconviction petition—that trial counsel was ineffective for waiving the PSI and not demanding that the State produce certified copies of the convictions—and attached copies of said convictions to the motion. The State again noted that the AHC statute interprets multiple convictions entered on the same day as individual convictions and, additionally, that the trial court took the PSI into consideration as indicated in the record. The State additionally argued that defendant did not show that his trial counsel was ineffective, where he simply stated that trial counsel subpoenaed alleged video surveillance that was not preserved for trial, but did not present any evidence that a video even existed. This was corroborated by his trial counsel.

¶ 27    In response to the State's motion to dismiss, postconviction counsel argued that defendant's petition should receive the benefit of consideration of the sentencing laws prior to the *Patterson*

case, contrary to the State's position, and that his sentence should be accordingly reduced. Counsel further argued that trial counsel was ineffective for failing to attack the basis of defendant's arrest because the State represented that the gun was loaded, when in fact it was unloaded.

¶ 28    On December 9, 2019, defendant filed a motion to proceed *pro se* in the postconviction proceedings, contending that APD Calabrese did not have his best interests in the proceedings and was not representing him to be best of her abilities, thereby causing a conflict of interest. He also requested standby counsel to assist him in his self-representation. Defendant argued that APD Calabrese subpoenaed the 911 call recordings on February 28, 2018, that would support defendant's claims; that the State's Attorney's office appointed a new Assistant State's Attorney on April 18, 2018, without turning over documents and other evidence for review; and that APD Calabrese withdrew a credible subpoena without his consent, knowledge, permission and agreement, which allowed evidence of his defense to be "buried in a mountain of red tape" and "deprive[d] defendant an opportunity of review by a fact finder and in a fact finder process." He concluded that APD Calabrese's actions were adversarial by failing to pursue credible evidence in the State's possession. Defendant also claimed that APD Calabrese refused to send the recovered weapon out for testing, which prevented defendant from securing fingerprint or DNA evidence of his actual innocence. He acknowledged that he forfeited this issue for review but claimed plain error.

¶ 29    After various delays due to the COVID-19 court closures, the trial court heard argument on defendant's postconviction petition in March 2020. After some discussion, defendant decided to proceed with APD Calabrese's representation but disputed the holding of the *Patterson* case, stating that there were still "some doors open for counsel to argue." At the

hearing, APD Calabrese conceded that the holding of the *Patterson* case resolved one of the issues in the postconviction petition against her, but nevertheless argued that the trial court improperly considered the State's argument regarding the "loaded gun" as evidence in aggravation at defendant's sentencing hearing when the recovered gun was actually unloaded, thereby prejudicing him. She stood on the remaining claims as written in the petition. Defendant was allowed to address the trial court directly and expressed confusion as to how he ended up with an AHC charge, as well as confusion as to how the 10- or 20-year rules worked for prior convictions. He also did not understand why his prior convictions counted for AHC, when he was under the age of 21 (defendant stated that he was 19 years old at the time of those convictions).

¶ 30    Subsequent to the hearing, defendant's petition was later dismissed on the State's motion on August 27, 2020. The court acknowledged that the holding in the *Patterson* case resolved defendant's eligibility as an AHC and further that defendant's sentencing was based on the evidence presented and not the State's argument. The court further stated that it had reviewed all of the pleadings and arguments and that defendant had not met his burden.

¶ 31    Defendant's timely notice of appeal was filed on September 14, 2020 (case number 1-20-1069). However, the dismissal was subsequently vacated by this court on an agreed motion for summary disposition by the parties because postconviction counsel failed to file an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate and substantial compliance with the rule was not otherwise established by the record. This court remanded the case to the circuit court for renewed second stage postconviction proceedings and compliance with Rule 651(c) on June 29, 2021. The trial court subsequently reset the matter for hearing on the State's motion to dismiss for September 1, 2021.

¶ 32       On September 1, 2021, defendant informed the trial court that he was proceeding *pro se* and did not wish for APD Calabrese to represent him. He indicated to the court that he would file his own amended petition. At the next court date on September 23, 2021, APD Calabrese appeared and explained that she had attached her Rule 651(c) certificate as an exhibit to the amended postconviction petition but had not filed it separately. Postconviction counsel had refiled her Rule 651(c) petition on September 15, 2021,[6] and stated that there were no further amendments needed to the petitions previously filed. Defendant, however, told the court that he did not have an attorney and ultimately decided to keep APD Calabrese. At the next court date, defendant again asserted that APD Calabrese was not his attorney; however, the record reflects that he acquiesced in her representation. The parties eventually conceded that there was a 651(c) certificate attached to APD Calabrese's amended postconviction petition at the May 5, 2022, court date.[7] The State's motion to dismiss was granted a second time on June 2, 2022, for the same reasons it was granted the first time. Defendant's notice of appeal was filed the same day.

¶ 33                            II. ANALYSIS

¶ 34       On appeal, defendant contends that his postconviction counsel failed to provide him with the reasonable assistance required under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et. seq.* (West 2016)) and Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). He asserts that counsel initially failed to file a 651(c) certificate along with her supplemental postconviction petition; when the case was remanded, postconviction counsel indicated that it

---

[6]We note that the various 651(c) boilerplate certificates contained in the record reference "Marlon Singleton" but not defendant.

[7]There are no exhibits attached to APD Calabrese's amended postconviction petition in the record on appeal.

was her first time handling a postconviction matter; counsel treated the proceedings on remand as entirely ministerial by failing to amend the petition, attach any of the missing exhibits, or make any new arguments. Defendant also contends that counsel misunderstood the nature of the offense and the relevant sentencing provisions, as well as the nature of postconviction proceeding because she asserted that the hearing on the State's motion to dismiss was a "contested hearing to reduce defendant's sentence." He argues that she pursued a sentencing claim without also alleging ineffective assistance of counsel for failure to file a motion to reconsider sentence and without alleging that a constitutional violation resulted from the improper sentencing. By doing so, defendant contends, counsel failed to overcome routine procedural bars to several of the claims in the petition. Defendant further argues that counsel failed to present his claims in the appropriate legal form and abandoned claims without explanation. He requests that this court reverse the dismissal of his postconviction petition and remand for further second-stage proceedings with the appointment of new counsel.

¶ 35                    A. Applicable Statutory Guidelines/Standard of Review

¶ 36        The Act is a legislative creation that allows a defendant to challenge substantial violations of his constitutional rights at trial. *People v. Moore*, 2023 IL App (1st) 220919, ¶ 23. The adjudication of a postconviction petition follows a three-stage process.

¶ 37        Proceedings under the Act are initiated by the filing of a petition in the trial court in which the original proceeding took place. *People v. Coleman*, 183 Ill. 2d 366, 379 (1998). The petition must clearly set forth the respects in which the petitioner's rights were violated. 725 ILCS 5/122-2 (West 2016). Section 122-2 of the Act requires that affidavits, records, or other evidence supporting the petition's allegations be attached to the petition. *Id.*

- 15 -

¶ 38      At the first stage of postconviction proceedings, the trial court must, within 90 days of a postconviction petition's filing, independently evaluate the petition. If the court determines that the petition is frivolous or patently without merit, it must dismiss the petition in a written order. *Id.* § 122-2.1(a)(2). A petition advances to the second stage if (1) the court fails to rule on the petition within the 90-day period, regardless of the petition's merit (*People v. Harris*, 224 Ill. 2d 115, 129 (2007)) or (2) the facts alleged in the petition state an arguable claim of constitutional deprivation (*People v. Hodges*, 234 Ill. 2d 1, 9, 17 (2009)). At the second stage of proceedings, counsel may be appointed under section 122-4 (725 ILCS 5/122-4 (West 2016)), and the State may answer the postconviction petition or move to dismiss it. *Id.* § 122-5. The relevant inquiry at the second stage is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Johnson*, 2018 IL 122227, ¶ 15. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Moore*, 2023 IL App (1st) 220919, ¶ 25. The trial court does not engage in fact-finding or credibility determinations at this stage; rather, all well-pleaded facts not positively rebutted by the original trial record are taken as true. *Id.* At the second stage of proceedings, only the legal sufficiency of defendant's petition is tested. *Id.* ¶ 27. A motion to dismiss filed at the second stage raises the sole issue of whether the petition being attacked is proper as a matter of law. *Id.*

¶ 39      If the petition fails to make a substantial showing of a constitutional violation, it is dismissed. *Id.* ¶ 26. If not dismissed, the petition advances to the third stage for an evidentiary hearing before deciding whether to grant relief. *Id.* It is at the third stage where the trial court functions as a factfinder by determining witness creditability and resolving conflicts in the evidence. *Id.*

¶ 40                                    B. Discussion

¶ 41        As noted above, this matter is before us on a second stage dismissal of defendant's *pro se*

postconviction petition, as well as counsel's supplemental petition. This appeal challenges

postconviction counsel's assistance as unreasonable for various reasons. Defendant asserts that

(1) counsel initially failed to file a 651(c) certificate along with her supplemental

postconviction petition, (2) when the case was remanded, postconviction counsel indicated that

it was her first time handling a postconviction matter, and (3) counsel treated the proceedings

on remand as entirely ministerial by failing to amend the petition, attach any of the missing

exhibits, or make any new arguments. Defendant also contends that counsel misunderstood the

nature of the offense and the relevant sentencing provisions, as well as the nature of

postconviction proceeding, because she asserted that the hearing on the State's motion to

dismiss was a "contested hearing to reduce defendant's sentence." He further argues that she

pursued a sentencing claim without alleging ineffective assistance of counsel for failure to file

a motion to reconsider sentence and without alleging that a constitutional violation resulted

from the improper sentencing. By doing so, defendant asserted, counsel failed to overcome

routine procedural bars to several of the claims in the petition. We will examine each argument

in turn.

¶ 42        Defendant first contends that postconviction counsel's representation was unreasonable

because she initially failed to file a Rule 651(c) certificate along with her supplemental

postconviction petition.

¶ 43        There is no constitutional right to the assistance of counsel in postconviction proceedings;

the right to counsel is totally statutory (725 ILCS 5/122-4 (West 2016)), and petitioners are

only entitled to the level of assistance provided for by the Act (*People v. Suarez*, 224 Ill. 2d

37, 42 (2007)). The Act provides for a reasonable level of assistance. To ensure this level of assistance, Rule 651(c) imposes specific duties on postconviction counsel. *Id.* Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) make any amendments to the filed *pro se* petitions necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. The purpose of the rule is to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court. *Profit*, 2012 IL App (1st) 101307, ¶ 18. Substantial compliance with Rule 651(c) is sufficient. *Id.*

¶ 44     The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *Id.* ¶ 19. It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated. *Id.* Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of postconviction petition on the State's motion, is *de novo*. *Id.* ¶ 17.

¶ 45     As indicated by the record, defendant's initial appeal was remanded by agreed order back to the trial court for counsel to file her 651(c) certification. The dismissal of defendant's postconviction petition was vacated and set for new second stage proceedings. This is precisely the remedy for a postconviction counsel's failure to file a 651(c) certificate. Our supreme court has held that remand is required where postconviction counsel failed to file the required certification showing compliance with Rule 651(c). See *Suarez*, 224 Ill. 2d at 47-52. Because the issue was cured by this court's remand for filing the 651(c) certificate and new second

stage proceedings, we find that defendant's claim that counsel's representation was unreasonable is without merit on that basis.

¶ 46    Defendant further asserts that when the case was remanded, postconviction counsel indicated that it was her first time handling a postconviction matter, and counsel treated the proceedings on remand as entirely ministerial by failing to amend the petition, attach any of the missing exhibits, or make any new arguments. He does not appear to make any specific arguments related to the first or second requirements of Rule 651(c), but instead focuses on the third requirement.

¶ 47    Defendant has not cited, nor have we found, a case that stands for the proposition that attorneys who are new to certain practice areas automatically provide unreasonable representation. It should be noted that, on remand, both his postconviction counsel and the Assistant State's Attorney assigned to the case indicated that they were new to postconviction proceedings.

¶ 48    Nor does defendant cite a case supporting his theory that, on remand for second stage proceedings, postconviction counsel gets another bite at the apple by further amending the *pro se* petition or raising additional claims in a second supplemental postconviction petition. Rather, the caselaw indicates that a remand for postconviction counsel's failure to file a Rule 651(c) certificate is for counsel to demonstrate compliance with the rule. See *People v. Hawkins*, 2020 IL App (3d) 160682, ¶ 16. In this case, the remand did not state that the second stage proceedings were to begin anew as in *Hawkins*, 2020 IL App (3d) 160682, ¶ 18 (upon remand we directed the trial court to begin the second stage postconviction proceedings anew with the reappointment of postconviction counsel), or *People v. House*, 2021 IL 125124, ¶ 41 (case remanded to the trial court to reconsider a claim in second stage postconviction

proceedings in light of new supreme court rulings). Instead, where postconviction counsel does not comply with the duties required by Rule 651(c), the reviewing court must remand the matter without considering the merits of the defendant's postconviction claims. *People v. Perez*, 2023 IL App (4th) 220280, ¶ 43; *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 52. That is precisely what happened here; the record indicates that after remand, postconviction counsel stated to the trial court that she had no further amendments or supplements, which was permissible under the rule. Defendant's disagreement with postconviction counsel's decision does not rise to unreasonable assistance.

¶ 49    While postconviction counsel is free to amend a petitioner's petition and add new claims, counsel is under no obligation to do so. *People v. Pendleton*, 223 Ill. 2d 458, 475-76 (2006). Counsel's obligation is limited to adequately presenting and supporting those constitutional claims raised by the petitioner. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). An examination of defendant's claims in his *pro se* postconviction petition reveal that, despite defendant's best efforts, the claims were not constitutional violations; rather, they amounted primarily to reasonable doubt arguments and a conflation of the AHC and habitual criminal statute. Reasonable doubt is not a constitutional claim and could have been raised on direct appeal. Defendant's confusion between the offense of AHC and the sentencing requirements for a habitual criminal is likewise not a constitutional violation and is also without merit. We cannot find that postconviction counsel was unreasonable for not amending defendant's claims that had no merit and instead filing a supplemental petition raising what counsel believed to be more meritorious claims. As our supreme court stated in *People v. Greer*, 212 Ill. 2d 192, 205 (2004), fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous claims on defendant's behalf. If amendment to a *pro se*

postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not necessary within the meaning of the rule.

¶ 50    Moreover, this is not a case where postconviction counsel was not appointed until after the State filed a motion to dismiss the *pro se* petition, such as in *Profit*, 2012 IL App (1st) 101307, ¶ 28. In those cases, postconviction counsel can respond to the State's motion to dismiss by amending the *pro se* petition or filing a supplemental petition. Rather, in this case, postconviction counsel's supplemental petition was filed prior to the State's motion to dismiss; thus, there was no separate opportunity to respond to the State's argument other than at the hearing on the motion.

¶ 51    Next, defendant contends that counsel misunderstood the nature of the offense and the relevant sentencing provisions, as well as the nature of postconviction proceeding because she asserted that the hearing on the State's motion to dismiss was a "contested hearing to reduce defendant's sentence." While it is true that postconviction counsel made that statement during the proceedings, we find it to be an accurate summation of counsel's argument in the supplemental petition that defendant was not eligible to be charged as an AHC because he did not have the requisite prior forcible felonies. Thus, the sentencing claim was validly raised. Again, at the time the supplemental petition was filed, the *Patterson* case had not yet been decided. As noted by the State in its motion to dismiss, this court had previously determined that the plain meaning of the term "times" did not indicate that the predicate convictions must occur (be entered) on separate days and that the plain language of the AHC statute does not contain any limiting language regarding the sequence or separate entry of convictions in *Patterson*, 2018 IL App (1st) 160610, ¶¶ 28-29. Once the decision was announced, postconviction counsel withdrew her argument on that issue.

¶ 52    We now examine defendant's claim that postconviction counsel pursued a sentencing claim without also alleging ineffective assistance of counsel for failure to file a motion to reconsider sentence and without alleging that a constitutional violation resulted from the improper sentencing. By doing so, counsel failed to overcome routine procedural bars to several of the claims in the petition. Defendant is again referencing the challenge to defendant's eligibility as an AHC raised in the supplemental petition filed in September 2018. It was based on the question of whether his prior convictions, which were the result of a guilty plea to several offenses, counted as separate offenses for purposes of AHC eligibility. It is true that counsel did not allege ineffective assistance of counsel for counsel's failure to raise this issue, but instead raised other related allegations of ineffective assistance related to defendant's sentencing.

¶ 53    As indicated above, while defendant's postconviction petitions were pending, this court resolved that issue in *Patterson*, thus mooting postconviction counsel's claim, as well as any related claim for ineffective assistance. As our supreme court has previously noted in *Pendleton*, postconviction counsel is only required to investigate and properly present the petitioner's claims; there is no obligation to raise additional issues. *Pendleton*, 223 Ill. 2d at 475-76. We therefore conclude that counsel's failure to raise a related claim for ineffective assistance regarding the sentencing issue is without merit.

¶ 54    Finally, defendant contends that postconviction counsel failed to present his claims in the appropriate legal form and abandoned claims without explanation. Specifically, defendant argues that postconviction counsel did not amend his petition's claim of an illegal search and seizure to reflect ineffective assistance of counsel for failing to file a motion to suppress or obtain the dispatch records to support defendant's claim of unlawful arrest. However, these

issues were addressed in depth in defendant's direct appeal and are therefore barred by *res judicata*. As such, postconviction counsel's representation cannot be unreasonable for not advancing those futile arguments. Additionally, the claim that postconviction counsel abandoned claims without explanation is unsupported by the record. It is very clear that counsel conceded the supplemental postconviction challenge to defendant's eligibility as an AHC, based on the question of whether his prior convictions, which were the result of a guilty plea to several offenses, counted as separate offenses for purposes of AHC eligibility only after this court's decision in *Patterson* was announced. Counsel still advocated on defendant's behalf that pre-*Patterson* law should apply. As noted earlier, the *Patterson* decision decided the question in the affirmative, thus resolving the issue, so postconviction counsel properly abandoned further presentment of that claim. Defendant has failed to establish that postconviction counsel's representation was unreasonable.

¶ 55                                    III. CONCLUSION

¶ 56        In sum, we reject defendant's various challenges to the reasonableness of postconviction counsel's representation. Accordingly, we affirm the judgment of the circuit court of Cook County, which dismissed defendant's *pro se* and postconviction counsel's supplemental petition on the State's motion.

¶ 57        Affirmed.

---

***People v. King*, 2023 IL App (1st) 220916**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-CR-08586; the Hon. Joseph M. Claps, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Talon K. Nouri, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha-Marie Kelly, and Julie Riekse, Assistant State's Attorneys, of counsel), for the People. |

---