2025 IL App (1st) 232395-U

SECOND DIVISION
August 19, 2025

No. 1-23-2395

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 91CR17856 |
| | ) | |
| DUANE MCCOY, | ) | Honorable |
| | ) | Pamela J. Stratigakis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) No error occurred in the second stage dismissal of defendant's successive postconviction petition where defendant cannot establish the requisite prejudice; and (2) postconviction counsel provided reasonable assistance.

¶ 2    Defendant Duane McCoy appeals the trial court's second stage dismissal of his successive postconviction petition, arguing that his petition made a substantial showing that his *de facto* life sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Specifically, defendant contends that: (1) he presented new, previously unavailable factual evidence that his brain was more akin to a juvenile because he was 19 years

old at the time of the offense, and (2) he was deprived of the reasonable assistance of postconviction counsel pursuant to Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) because counsel failed to amend his petition to further support his sentencing claim.

¶ 3    Following a jury trial, defendant was found guilty of the 1991 first degree murder of James Fleming. The trial court subsequently sentenced defendant to a term of 80 years for the first degree murder conviction and a concurrent sentence of three years for unlawful use of a weapon by a felon (UUWF). The court also imposed a consecutive sentence of seven years in an unrelated robbery case at the same sentencing hearing. We summarize the evidence presented at defendant's jury trial as necessary for our resolution of the issues raised on appeal. A full recitation of the evidence presented at defendant's trial is set forth in the opinion from defendant's direct appeal. *People v. McCoy*, 281 Ill. App. 3d 576 (1996).

¶ 4    Jacob Camacho testified that he was a member of the Insane Unknowns street gang with defendant. On July 20, 1991, Camacho was with defendant and other gang members at an apartment to mourn the death of a fellow gang member, Jesse "Bingo" Maldonado. Camacho saw defendant "sniff some cocaine" and then defendant said he was "going to 'get one for Bingo.' " *Id*. at 578. When defendant later left the apartment, Camacho followed and tried to dissuade defendant from doing "anything stupid." Defendant repeated that he was going to " 'get one for Bingo.' " Camacho saw defendant shoot Fleming, but Camacho then fled after the first bullet was fired. He returned to the apartment and told the others what had happened. *Id*. at 578-79.

¶ 5    Barney Jones and Londell Lancaster both testified about witnessing the shooting. Each witness recounted how defendant walked up to a group of males sitting on a car and after brief

exchange, defendant pulled out a gun and began shooting. Jones saw Fleming was struck by the bullets and fell to the ground. He then saw defendant walk over, shoot Fleming again in the head at close range, and then run away. Lancaster had been sitting on the hood of a car with Fleming when defendant approached. Defendant asked the men if they had any marijuana before he pulled out a gun and started shooting. Both men identified defendant as the shooter in separate lineups. *Id*. at 579.

¶ 6      After defendant was arrested, he provided an inculpatory statement to the police admitting that he shot Fleming. *Id*. at 580. At trial, defendant testified in his own defense and admitted that he had ingested cocaine on the day of the shooting and " 'blinked out,' " which he stated meant he fell asleep. The next thing he remembered was being awoken by the police and arrested, but he did not remember anything that occurred at the police station. He did not remember giving a statement or appearing in a lineup. He denied shooting Fleming. *Id*. at 581-82.

¶ 7      The jury subsequently found defendant guilty of first degree murder. At the sentencing hearing, the trial court found defendant's actions were "exceptionally brutal and heinous behavior indicative of wanton cruelty" and imposed an extended term sentence of 80 years with the concurrent sentence of three years for UUWF. The court further found that defendant's conduct constituted a violation of his probation on a previous felony charge of robbery and sentenced defendant to a consecutive term of seven years in the unrelated robbery case.

¶ 8      Defendant asserted multiple issues on direct appeal, including that: (1) the trial court erred in refusing defendant's request for money to hire an expert on voluntary intoxication; (2) the trial court erred in refusing to instruct the jury on the defense of voluntary intoxication; and (3) his sentence was excessive and the facts did not support the court's finding of brutal and

heinous behavior. The reviewing court rejected these claims and affirmed defendant's conviction and sentence. *Id*. at 586.

¶ 9        Defendant filed his initial *pro se* postconviction petition in January 2012, alleging violations of his constitutional rights, including that he was improperly sentenced to an extended term sentence in violation of due process. The trial court dismissed the petition on the State's motion and the reviewing court affirmed the second-stage dismissal of that petition after granting appellate counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. McCoy*, No. 1-14-0013 (2015) (summary order filed pursuant Supreme Court Rule 23(c)(2), (4) (eff. July 1, 2011)).

¶ 10        In July 2016, defendant filed a *pro se* motion for leave to file his first successive postconviction petition, alleging that his 87-year sentence was unconstitutional under both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) following the Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460 (2012). He filed another motion for leave to file a successive petition based on the same claim in September 2016. In August 2017, defendant moved to supplement his petition with new case law. In May 2019, the trial court denied defendant leave to file his successive petition finding that defendant could not establish the requisite prejudice to warrant further proceedings. Defendant did not appeal this order.

¶ 11        In August 2019, defendant filed a *pro se* motion for leave to file his second successive postconviction petition arguing "for the first time" that his *de facto* life sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. He asserted that he established cause because the claims were "so novel"

and the legal basis was not "reasonably available" to him earlier. He contended he was prejudiced because the claim "so infected the judgment of conviction" when defendant was 19 years and 3 months old at the time of the offense and his brain was still developing, making him more like an adolescent than a mature adult. In support, defendant attached his own affidavit that he was not able to include the scientific studies on youth offenders at the time of his sentencing and provided a website address for a study on "Young Adults in Conflict with the Law: Opportunities for Diversion" by Ishida Kanako. The trial court granted defendant's motion for leave to file and postconviction counsel was appointed.

¶ 12    Postconviction counsel filed a supplemental exhibit including a new affidavit from defendant and letters in support of defendant. Counsel filed a certificate pursuant to Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)), stating that: (1) he had communicated with defendant by telephone and mail to ascertain his contentions of deprivations of his constitutional rights; (2) he had examined the trial record; and (3) he had examined defendant's petition and would not be filing anything additional because defendant's petition adequately represented defendant's constitutional claims.

¶ 13    In June 2023, the State moved to dismiss defendant's successive postconviction petition, contending that defendant cannot establish the requisite cause and prejudice test, his claim of a *de facto* life sentence was not valid, and his proportionate penalties claim failed to establish his as-applied challenge. After hearing arguments from the parties, the trial court granted the State's motion and dismissed defendant's petition.

¶ 14    Defendant filed a timely notice of appeal arguing that he satisfied the cause and prejudice test because his petition presented new, previously unavailable evidence that his brain was immature and still developing when he committed the offense. In the alternative, defendant

contends that he was deprived of the reasonable assistance of postconviction counsel because counsel failed to amend defendant's petition to adequately present his sentencing claim and to respond to recent changes in Illinois law raised in the State's motion to dismiss. The State maintains that the trial court properly dismissed defendant's successive petition.

¶ 15    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2020)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Smith*, 2014 IL 115946, ¶ 22. Only one postconviction proceeding, however, is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). As a result, the bar against successive postconviction proceedings should be relaxed only when (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *Smith*, 2014 IL 115946, ¶ 30. After the trial court grants defendant leave to file, the petition will be docketed for second-stage proceedings. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 20.

¶ 16    At the second stage, the defendant may request counsel to be appointed to represent him or her, if necessary (725 ILCS 5/122-4 (West 2020)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2020)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *People v. Sanders*, 2016 IL 118123, ¶ 37. If no such showing is made, the petition is dismissed. If a substantial showing of a constitutional violation has been shown, then the petition is advanced to the third stage, where the circuit court conducts an

evidentiary hearing. 725 ILCS 5/122-6 (West 2020). When considering a motion to dismiss at the second stage of proceedings, we accept as true all factual allegations that are not positively rebutted by the record. *People v. Johnson*, 2017 IL 120310, ¶ 14. Our standard of review for a second stage dismissal is *de novo*. *Id*.

¶ 17    Under the cause and prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause and prejudice standard is higher than the normal first stage "frivolous or patently without merit" standard applied to initial petitions. *Id.* ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act"). "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48. It is defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted leave before further proceedings on his claims can follow. See *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 18    Here, defendant argues that his "87-year," *de facto* life sentence was imposed without considering his youth and its attendant circumstances in violation of the proportionate penalties clause. According to defendant, his 19-year-old brain was immature and still developing and he asserts that recent research on neurological developments support his claim.

¶ 19    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll

penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "To succeed on a proportionate penalties claim, a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009). Our supreme court has never defined what kind of punishment constitutes "cruel," "degrading,"," or "so wholly disproportioned to the offense as to shock the moral sense of the community" because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 339 (2002). It is under this evolving societal standard that defendant contends that his mandatory life sentence shocks the moral sense of community.

¶ 20    Defendant's "87-year" sentence arises from his combining of the two consecutive sentences imposed for separate convictions and stemming from separate incidents. Defendant received an 80-year sentence for the first degree murder conviction. At the same sentencing hearing, the trial court sentenced defendant to a consecutive term of seven years for a separate, unrelated robbery conviction in a different case. Defendant seeks to aggregate these sentences to assert that he is serving a *de facto* life sentence. However, this argument is flawed for two significant reasons.

¶ 21    First, and contrary to defendant's argument, sentences from separate cases cannot be aggregated for purposes of a proportionate penalties claim. Significantly, these convictions did not occur during a single course of conduct but were separate and unrelated offenses with their own respective case number. Defendant was serving probation in the robbery case at the time of

Fleming's murder. The ability to mount a constitutional challenge by aggregating multiple sentences arising from different incidents fails. The Illinois Supreme Court has long held that "consecutive sentences do not constitute a single sentence and cannot be combined as though they were one sentence for one offense." *People v. Carney*, 196 Ill. 2d 518, 530 (2001); see also *People v. Elliott*, 272 Ill. 592, 600-02 (1916)) (finding no violation of the proportionate penalties clause because "the validity of the sentences is not affected by the fact that there were numerous violations and cumulative penalties"). As the supreme court concluded, "the Illinois constitutional provision requiring that all penalties shall be proportionate to the nature of the offense does not apply to the aggregate of the punishments inflicted for different offenses." *Carney*, 196 Ill. 2d at 529 (citing *Elliott*, 272 Ill. at 600). Accordingly, defendant's attempt to combine his two separate sentences to challenge a *de facto* life sentence lacks merit and does not support a proportionate penalties challenge. The only sentence relevant to his proportionate penalties claim is the 80-year term for first degree murder.

¶ 22    The second reason defendant's claim fails is that his 80-year sentence is not a *de facto* life sentence. Our supreme court has held that only a sentence greater than 40 years is considered a *de facto* life sentence. *People v. Buffer*, 2019 IL 122327, ¶ 41. Further, any day-for-day credit must be deducted when determining whether a lengthy, term-of-years sentence qualifies as a *de facto* life sentence under *Buffer*. *People v. Dorsey*, 2021 IL 123010, ¶ 64. *Dorsey* makes it clear that this court is to consider the statutory scheme under which a youthful offender was sentenced to determine whether it provided a realistic opportunity for release. *Id*. ¶ 58.

¶ 23    Here, the first degree murder was committed in 1991, and defendant was sentenced in 1994 before the truth-in-sentencing statute was enacted. At the time of sentencing, the Unified Code of Corrections provided, "the prisoner shall receive one day of good conduct credit for

each day of service in prison other than where a sentence of 'natural life' has been imposed." 730 ILCS 5/3-6-3(a)(2) (West 1994). Therefore, defendant has been eligible for day-for-day credit and he has the opportunity to demonstrate maturity and rehabilitation so that he only needs to serve 40 years of his 80-year sentence. Further, we take judicial notice that according to the Department of Corrections website, defendant's projected parole date is in November 2028, after serving less than 38 years in prison. See *People v. Johnson*, 2021 IL 125738, ¶ 54 (finding that Illinois courts may take judicial notice of a defendant's online records on the Department of Corrections website).

¶ 24     In his reply brief, defendant maintains that his aggregate sentences from the separate cases should be considered a *de facto* life sentence. However, his argument fails to address the supreme court's longstanding holding that aggregating sentences in distinct cases is not permitted in a proportionate penalties analysis. See *Carney*, 196 Ill. 2d at 530; *Elliott*, 272 Ill. at 600-02. We also find defendant's reliance on *People v. Ruiz*, 2021 IL App (1st) 182401, to be questionable because its analysis has been implicitly overruled by recent supreme court authority. See *Dorsey*, 2021 IL 123010, ¶ 64 (any day-for-day credit must be taken into consideration to determine a *de facto* life sentence). The *Ruiz* court did not consider whether aggregate sentences in separate cases constituted a violation of the proportionate penalties clause and, therefore, it is of no import here. Defendant's discussion of *People v. Reyes*, 2016 IL 119271, ¶ 10, is also misplaced because the *Reyes* court considered whether the defendant's sentence for offenses committed "in a single course of conduct" subjected him to a *de facto* life sentence. Significantly, the supreme court did not address the possibility of combining sentences from separate cases in a proportionate penalties claim and it has no relevance here.

¶ 25     Based on the applicable statutory scheme for defendant, we find that defendant was not

sentenced to the functional equivalent of a life sentence without the possibility of parole in violation of *Buffer*. Since defendant is not serving a *de facto* life sentence, he cannot establish the requisite prejudice to support his proportionate penalties claim. Absent that necessary prejudice, defendant's sentencing challenge fails, and we need not consider whether defendant satisfied the cause prong. See *Smith*, 2014 IL 115946, ¶ 37 ("Having concluded that defendant cannot show prejudice, we need not address defendant's claim of cause."). Accordingly, the trial court properly dismissed defendant's successive postconviction petition.

¶ 26    Defendant next contends that he was denied his right to reasonable assistance of postconviction counsel. More specifically, he asserts that his counsel did not make any additional amendments to his petition to demonstrate how the recent scientific studies considering the brain development of young adults applied to defendant's circumstances or to address recent changes in Illinois law.

¶ 27    The right to counsel in proceedings under the Act is not a constitutional right, but strictly a matter of legislative grace derived from the Act. *People v. Huff*, 2024 IL 128492, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 30). Further, a postconviction defendant is entitled to only a reasonable level of assistance, which is a standard lower than that provided by the federal or state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 28    To ensure that postconviction petitioners receive reasonable assistance, Rule 651(c) outlines the specific duties that postconviction counsel must follow in those proceedings. *Huff*, 2024 IL 128492, ¶ 22. That rule provides that postconviction counsel file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of the deprivation of a constitutional right, (2) examined the record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions

are adequately presented. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Once postconviction counsel has filed a Rule 651(c) certificate, a rebuttable presumption arises that postconviction counsel provided reasonable assistance. *Custer*, 2019 IL 123339, ¶ 32.

¶ 29    Since we have already concluded that defendant's proportionate penalties claim lacked merit, we cannot find that postconviction counsel was unreasonable for not amending defendant's this claim. Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous claims on defendant's behalf. *People v. Greer*, 212 Ill. 2d 192, 205 (2004); see also *People v. King*, 2023 IL App (1st) 220916, ¶ 49. If an amendment to a defendant's petition would only further a frivolous or patently nonmeritorious claim, then it is not necessary within the meaning of the rule. *Id*. Because defendant is not serving a *de facto* life sentence, postconviction counsel was not obligated to amend defendant's petition to develop this meritless claim.

¶ 30    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 31    Affirmed.