2025 IL App (1st) 232116

First District
Third Division
December 5, 2025

No. 1-23-2116

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 92 CR 00094 |
| LARRY REED, | ) ) ) | The Honorable Domenica A. Stephenson, Judge Presiding. |
| Defendant-Appellant. | ) ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1      Following a 1993 jury trial, defendant Larry Reed was convicted of two counts of attempted first degree murder (720 ILCS 5/8-4, 9-1 (West 1992)) and two counts of armed robbery (*id.* § 18-2) for shooting two employees during a robbery of a convenience store. Due to his prior criminal history, defendant was sentenced to a term of natural life imprisonment without the possibility of parole. See *id.* § 33B-1. In 2023, defendant sought leave to file a successive postconviction petition based on a 2022 Illinois Supreme Court case, which he contended rendered his life sentence void. The circuit court denied leave to file the successive postconviction petition, and defendant now appeals that denial. For the reasons set forth below, we affirm.

¶ 2                               BACKGROUND

¶ 3      The instant appeal represents the fourth occasion defendant's case has been before this court, as we previously issued decisions concerning (1) defendant's direct appeal, (2) the

dismissal of his initial postconviction petition, and (3) the denial of leave to file a successive postconviction petition. Accordingly, we relate the facts as set forth in our prior decisions where appropriate, and include only those facts necessary for an understanding of the issues on appeal.

¶ 4                                    *Conviction and Sentence*

¶ 5        The evidence at defendant's trial established that, at approximately 12:30 p.m. on November 8, 1991, defendant entered the St. Louis Food and Liquor Store in Chicago. This marked his fourth entry into the store in a period of two hours. Defendant made small purchases on his first three visits and, on the fourth, he selected a few items and placed them on the counter. Ahamad Shawabken (Ahamad) was tending the register, while Khaled Shawabken (Khaled), another employee and Ahamad's brother, was sitting nearby. Defendant announced a robbery to Khaled, pointed a firearm at him, and demanded money. Khaled responded that he would give defendant anything and implored him not to shoot. Defendant, however, shot Khaled in the knee and stomach. At this point, Ahamad came out from behind the counter and defendant fired at him and demanded money. Khaled then told Ahamad to push the alarm button, which prompted defendant to fire two more shots at Khaled. Ahamad threw a bag containing $3,000 in currency and $1,500 in food stamps at defendant and, as he reached for the alarm button, defendant shot him in the neck. Defendant then left the store with the bag. Khaled and Ahamad were taken to the hospital; Khaled underwent extensive surgery and spent four months there, while Ahamad was treated and released on the same day.

¶ 6        A jury found defendant guilty of two counts of attempted first degree murder, two counts of armed robbery, and two counts of aggravated battery with a firearm. The aggravated battery counts were merged with the counts of attempted first degree murder, and judgment was

entered on the verdicts. The State requested that defendant be sentenced as a habitual criminal pursuant to section 33B-1 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/33B-1 (West 1992)).

¶ 7    In support of its request, the State submitted evidence of two prior convictions for armed robbery, both Class X offenses. The first, one of two related convictions in case Nos. 81 C 1247 and 1248, was entered on January 11, 1982, and concerned an offense committed while defendant was 17 years old.[1] The second, in case No. 85 C 13815, was a conviction dated June 10, 1986. The trial court found that, based on his prior convictions, defendant was a habitual criminal and sentenced him to natural life imprisonment without the possibility of parole.

¶ 8                                   *Postjudgment Proceedings*

¶ 9    Defendant filed a direct appeal, in which he contended that he was entitled to a new trial based on an improper evidentiary ruling by the trial court and improper remarks made by the prosecutor in closing argument. Defendant's conviction was affirmed on appeal. See *People v. Reed*, No. 1-94-0191 (1996) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10    In 1996, defendant filed a *pro se* postconviction petition, which was subsequently supplemented by appointed counsel. In his petition, defendant alleged ineffective assistance of trial and appellate counsel on several bases. The petition, however, was dismissed at the second stage, as the circuit court found that all of the issues raised in the petition were matters of record which could have been raised on direct appeal and were therefore *res judicata* or waived. On appeal, defendant raised only the issue of ineffective assistance of appellate counsel, and we

---

[1] In his motion for leave to file his successive postconviction petition, defendant claimed that the offense occurred in May 1981. Evidence from defendant's sentencing hearing, however, suggests that the offense occurred on February 10, 1981, and defendant was arrested on May 18, 1981. We note that both dates were prior to defendant's 18th birthday on May 27, 1981.

3

affirmed the dismissal of the petition. See *People v. Reid*,[2] No. 1-99-1223 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11    In 2003, defendant filed a *pro se* successive postconviction petition, contending that the sentencing statute was unconstitutionally applied to him where the trial court failed to state a sufficient factual basis to support its imposition of a natural life sentence. The circuit court found that defendant's claim was without merit and summarily dismissed the successive petition. On appeal, defendant abandoned his sentencing claim and instead contended that he was denied the right to a fair trial due to alleged errors in the trial court's instructing the jury and in the prosecutor's closing argument. We found that defendant's arguments, raised for the first time on appeal, were not properly preserved and accordingly affirmed the dismissal of the successive petition. See *People v. Reed*, No. 1-04-1399 (2005) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12    In 2005, defendant filed a *pro se* motion for leave to file another successive postconviction petition. The circuit court denied defendant's motion, finding that defendant had not satisfied the cause-and-prejudice test where the issues raised by the petition were frivolous and patently without merit and did not raise a valid and legitimate issue of a miscarriage of justice. Defendant did not appeal the denial to this court.

¶ 13    In 2018, defendant filed a *pro se* motion seeking to have evidence collected in his case undergo fingerprint, ballistic, and DNA testing which was not available at the time of his trial.[3] The State moved to dismiss, disclosing that much of the evidence defendant sought to be tested

---

[2] Defendant's last name was spelled "Reid" in the notice of appeal from the dismissal of his initial postconviction petition. In all other areas, however, it is spelled "Reed."

[3] At the time of the incident, police investigators collected several items from the scene, which they sent to the lab for processing. They were able to recover one fingerprint suitable for comparison from the bottle which defendant had placed on the counter, but the fingerprint did not match defendant's. Given the "problematic" surfaces involved, no other suitable prints were recovered from the scene.

had been destroyed. As a result, in 2022, defendant filed an amended petition through appointed counsel, requesting testing of the evidence or, if it had been destroyed, "a hearing on spoliation and the vacatur of his conviction coupled with the sanction of dismissal of the charges against him." On April 27, 2022, the circuit court entered an agreed order granting postconviction latent lift examination of the fingerprint evidence currently in the custody of the clerk of the circuit court of Cook County, but the testing ultimately returned no identification. The remainder of defendant's motion was denied on April 20, 2023.

¶ 14                              *Instant Successive Postconviction Petition*

¶ 15        On June 12, 2023, defendant filed a *pro se* petition to vacate his judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)), based on the 2022 Illinois Supreme Court decision in *People v. Stewart*, 2022 IL 126116, which he contended rendered his life sentence void. Specifically, defendant alleged that, under *Stewart*, recent amendments to the habitual criminal statute were retroactive, meaning that he was statutorily ineligible to be sentenced as a habitual criminal where the first predicate offense used as a qualifying offense occurred when he was less than 21 years old. While *Stewart* concerned a different subsection of the habitual criminal statute, defendant maintained that its holding should be applied to the entirety of the statute.

¶ 16        On July 25, 2023, defendant filed a combined *pro se* motion to withdraw his section 2-1401 petition and motion for leave to file a successive postconviction petition. Defendant explained that he realized that section 2-1401 was not the proper vehicle by which to raise his sentencing claim and, accordingly, requested that the circuit court consider his claim under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)).

¶ 17    Defendant contended that he had established cause for not raising his claim earlier where the *Stewart* court announced a new substantive rule clarifying the scope of the habitual offender statute which was not previously available to him. In addition, defendant argued that he had demonstrated prejudice, as the imposition of a life sentence violated due process where he was not eligible to receive such a sentence.

¶ 18    On September 29, 2023, the circuit court granted defendant's motion to withdraw his section 2-1401 petition but denied him leave to file his successive postconviction petition. The circuit court found that the amendments to the habitual criminal sentencing statute were prospective, not retroactive, and that the *Stewart* court's analysis did not apply to defendant's case. As the circuit court determined that the claim raised in his petition was without merit, it denied defendant leave to file his successive postconviction petition.

¶ 19    Defendant timely filed a notice of appeal on October 25, 2023.

¶ 20                    *Post-Appellate Proceedings*

¶ 21    Subsequent to the filing of the notice of appeal in the instant case, defendant appears to have been granted leave to file a successive postconviction petition on April 29, 2024, raising a similar sentencing claim. The State filed an answer to that petition[4] on October 16, 2024, in which it admitted, in relevant part:

> "The People enter an admission of the allegation in Petitioner's successive post-conviction [petition] filed on April 29, 2024[,] solely as it pertains to the allegation that Petitioner's first predicate offense in his being adjudged a habitual criminal was committed when he was under 21 years of age. The recent Illinois case of *People v.*

---

[4] We note that, in its brief, the State suggests that this answer is "outside of the record and merely appended to [defendant's] brief." Defendant, however, has since supplemented the record on appeal to include the State's answer.

*Durant*, 2024 IL App (1st) 211190-B[,] has set forth the precedent that no offense that was committed when an offender was under the age of 21 can be used as a predicate offense when sentencing an individual as a habitual criminal. Therefore, the People request a third stage hearing and a subsequent resentencing as to the Petitioner being adjudged a habitual criminal."

¶ 22    Based on the parties' representations to this court, it appears that the circuit court stayed proceedings on the subsequent petition pending a ruling on a similar case currently before the Illinois Supreme Court. See *People v. Brown*, No. 130930, *pet. for leave to appeal granted from* 2024 IL App (1st) 221859-U. We observe that neither party has requested a stay in the instant appeal based on the pending Illinois Supreme Court case and, indeed, defendant in his appellate brief affirmatively argues that "this Court should not wait" to consider the matter.

¶ 23                                              ANALYSIS

¶ 24    On appeal, defendant contends that the circuit court erred in denying him leave to file his successive postconviction petition. The Act provides a framework for incarcerated individuals to collaterally attack their convictions by establishing the substantial denial of a constitutional right during trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2022). The statute, however, generally contemplates the filing of only one postconviction petition. *People v. Clark*, 2023 IL 127273, ¶ 39; 725 ILCS 5/122-1(f) (West 2022). As the filing of successive postconviction petitions is "highly disfavored," a defendant may file a successive petition only under certain circumstances and must obtain leave of court to do so. (Internal quotation marks omitted.) *Clark*, 2023 IL 127273, ¶ 39.

¶ 25    Our supreme court has identified two bases upon which the bar against successive proceedings will be relaxed, including, as relevant to the instant appeal, where a defendant can

establish "cause and prejudice" for failing to raise the claim in an earlier petition. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002); see also 725 ILCS 5/122-1(f) (West 2022) (codifying cause-and-prejudice test). In determining whether to grant leave to file a successive postconviction petition, the circuit court makes a cause-and-prejudice determination by conducting a preliminary screening of the defendant's motion to assess whether the motion adequately alleges facts making a *prima facie* showing of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 47. If the circuit court grants the defendant leave to file, the petition is docketed for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶ 28; see also *People v. McCoy*, 2025 IL App (1st) 232395-U, ¶ 15.

¶ 26      At the second stage, the court may appoint counsel to represent an indigent defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); 725 ILCS 5/122-4, 122-5 (West 2022). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation will the defendant proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2022).

¶ 27      In this case, the circuit court denied defendant leave to file his successive postconviction petition. Thus, on review, we must determine whether defendant's motion adequately made a *prima facie* showing of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 48. A defendant shows "cause" under the Act by identifying an objective factor which impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2022). In addition, a defendant establishes "prejudice" by demonstrating that the claim not raised "so infected the trial that the resulting conviction or sentence violated due process." *Id.* Both

elements of the test must be satisfied to overcome the bar against successive proceedings, and we review the circuit court's cause-and-prejudice determination *de novo*. *Clark*, 2023 IL 127273, ¶ 47. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter or law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 28                        *Habitual Criminal Statute and Amendments*

¶ 29        The claim defendant seeks to raise in his successive postconviction petition concerns the constitutionality of his sentencing as a habitual criminal. Accordingly, we begin with a discussion of the applicable sentencing statute. At the time of defendant's sentencing, section 33B-1 of the Criminal Code provided:

> "Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." 720 ILCS 5/33B-1(a) (West 1992).

A defendant adjudged a habitual criminal "shall be sentenced to life imprisonment" except when the death penalty was to be imposed. *Id.* § 33B-1(e).

¶ 30        The statute further provided that, for the habitual criminal statute to apply, four elements must be satisfied:

> "(1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense; [and]

(4) the second offense was committed after conviction on the first offense." *Id.* § 33B-1(d).

¶ 31    In 2009, section 33B-1 was repealed and, along with several related statutes, was recodified as section 5-4.5-95(a) of the Unified Code of Corrections (Code of Corrections).[5] See Pub. Act 95-1052 (eff. July 1, 2009) (adding 730 ILCS 5/5-4.5-95). In addition, subsection (b) of the new statute, which recodified the former section 5-5-3(c)(8) of the Code of Corrections, provided:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of a different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

(1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);

---

[5] The new statute combined the provisions of the former sections 33B-1, 33B-2, and 33B-3 into a single section. Compare 720 ILCS 5/33B-1, B-2, B-3 (West 2008) with 730 ILCS 5/5-4.5-95(a) (West 2010). In addition, the new statute recodified the former section 5-5-3(c)(8) as section 5-4.5-95(b). Compare 730 ILCS 5/5-5-3(c)(8) (West 2008) with 730 ILCS 5/5-4.5-95(b) (West 2010).

(2) the second felony was committed after conviction on the first; and

(3) the third felony was committed after conviction on the second." 730 ILCS 5/5-4.5-95(b) (West 2010).

Thus, in short, the new section 5-4.5-95 governed (a) the imposition of a life sentence and (b) the classification as a Class X offender, both based on a history of recidivism.

¶ 32    Section 5-4.5-95(a) was amended in 2016, as part of a series of amendments concerning the sentencing of individuals under the age of 18. See Pub. Act 99-69 (eff. Jan. 1, 2016). The previous version of the statute, as noted, had provided that "[e]xcept when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a)(5) (West 2014). The amended version changed this language to read: "Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a)(5) (West 2016). The rest of the statute, including subsection (b), remained unchanged.

¶ 33    In 2021, the statute was amended to the form at issue in the current appeal. See Pub. Act 101-652 (eff. July 1, 2021). The statute now provides, in relevant part:

"(a) HABITUAL CRIMINALS.

(1) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now (the date of the offense committed after the 2 prior convictions) classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping, or first degree murder, and who is thereafter convicted of a Class X felony, criminal sexual assault, or first

11

degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

\* \* \*

(4) This Section does not apply unless each of the following requirements are satisfied:

(A) The third offense was committed after July 3, 1980.

(B) The third offense was committed within 20 years of the date that judgment was entered on the first conviction; provided, however, that time spent in custody shall not be counted.

(C) The third offense was committed after conviction on the second offense.

(D) The second offense was committed after conviction on the first offense.

*(E) The first offense was committed when the person was 21 years of age or older.*

(5) Anyone who is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment.

\* \* \*

(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 forcible felony after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date of the Class 1 or Class 2 forcible felony was committed) classified in Illinois as a Class 2 or greater Class forcible felony and those charges are separately brought and tried and arise out of different series of act, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

(1) the first forcible felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);

(2) the second forcible felony was committed after conviction on the first;

(3) the third forcible felony was committed after conviction on the second; and

*(4) the first offense was committed when the person was 21 years of age or older.*" (Emphases added.) 730 ILCS 5/5-4.5-95 (West 2022).

¶ 34                    *Interpretation of Section 4-4.5-95*

¶ 35        Following the 2021 amendments to section 4-4.5-95, the Illinois Supreme Court discussed the impact of the new language in subsection (b) on certain sentences imposed under the previous version of the statute. In *Stewart*, 2022 IL 126116, the supreme court was asked to determine whether a defendant who had been sentenced as a Class X offender under the previous version of the statute was statutorily eligible for such a sentence where his first conviction occurred at the age of 17 and would have been a juvenile adjudication under the current state of the law.[6] The supreme court determined that the statute was silent on the question of "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Id.* ¶ 16. The supreme court, however, observed that this "silence" had resulted in a split in the appellate court on the matter. *Id.* ¶ 17. While it noted that, typically, a statute's silence on an issue "is akin to an

---

[6] One year after the *Stewart* defendant's 2013 adult conviction at age 17, the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2014)) was amended to raise the age for exclusive juvenile jurisdiction from 16 years to 17 years, and the defendant contended that his residential burglary conviction would have resulted in a juvenile adjudication, not a felony conviction, had it occurred under the current state of the law. *Stewart*, 2022 IL 126116, ¶ 7. We observe that this concern is not implicated in the instant case, as defendant would have been tried in criminal court even under the current version of the law. See 705 ILCS 405/5-130 (West 2022).

ambiguity" in that it allowed the consideration of extrinsic aids of construction, the supreme court noted that in the case before it, such extrinsic aids were unnecessary where the legislature had subsequently amended section 5-4.5-95(b). *Id.* ¶ 18.

¶ 36    The supreme court explained that a statutory amendment creates a presumption that the legislature was intended to change existing law, but such a presumption was not controlling. *Id.* ¶ 20. Instead, a reviewing court "should consider the circumstances surrounding the amendment to determine whether the legislature intended merely to interpret or clarify the original act." *Id.* Circumstances which could suggest that the amendment was intended as a clarification "include whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." (Internal quotation marks omitted.) *Id.*

¶ 37    In the case before it, the supreme court observed that, prior to the 2021 amendment, there existed a conflict in the appellate court regarding the interpretation of subsection (b) with respect to defendants who were under the age of 18 at the time of at least one predicate offense. *Id.* ¶ 21. The supreme court found that "[t]he existence of these conflicting appellate court decisions negates the presumption that the legislature intended to change existing law when it amended the statute to require that qualifying offenses must have been committed when the person was 21 years of age or older." *Id.* ¶ 22. It observed that, " '[b]ecause of the differing views in the appellate court, there was no clear interpretation of the law to be changed.' " *Id.* (quoting *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 300 (2010)). Accordingly, the supreme court found that the 2021 amendment "was intended to resolve the conflict in the

appellate court and clarify the meaning of the original statute," and the defendant's conviction could not serve as a qualifying offense under the prior version of the statute.[7] *Id.*

¶ 38    In 2024, in response to a supervisory order from the supreme court directing reconsideration in light of *Stewart*, a divided panel in *People v. Durant*, 2024 IL App (1st) 211190-B, found that the supreme court's interpretation of the amended language in subsection (b) also applied to the identical language contained in subsection (a).[8] The *Durant* court emphasized that the amended language was identical and was enacted simultaneously as part of the same public act. *Id.* ¶ 32. The *Durant* court observed: "Given these circumstances, it is hard to conceive how the legislature could have intended one of the amendments to be a mere clarification of existing law (that applied retroactively), while having a very different intent for the other identically worded amendment. Indeed, it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act." *Id.*

¶ 39    The *Durant* court acknowledged that the legislative history of the two subsections was not identical, given the previous amendment to subsection (a) which added the requirement that the defendant be at least 18 years old at the time of the third offense. *Id.* ¶ 35. It, however, disagreed with the State's argument that this different legislative history meant that the

---

[7] We observe that the supreme court has addressed *Stewart* once since the issuance of its decision, in *People v. Wallace*, 2025 IL 130173. In that case, which concerned the interpretation of the armed habitual criminal statute, the supreme court distinguished *Stewart*, noting that the Class X sentencing statute interpreted by the *Stewart* court had been amended to include a minimum age for qualifying offenses, which was not present in the statute before the *Wallace* court. *Id.* ¶ 23. In addition, the *Wallace* court observed that *Stewart* "illustrates the point that 'the legislature knows how to express whether the defendant's age at the time of a prior conviction affects the status of that conviction in future proceedings,' " and had not done so with respect to the armed habitual criminal statute. *Id.* (quoting *People v. Hawkins*, 2024 IL App (1st) 220991-U, ¶ 24).

[8] Prior to the *Durant* decision, the only case referencing subsection (a) in light of *Stewart* was *People v. O'Neal*, 2023 IL App (4th) 170682-UB, in which the State conceded that *Stewart* controlled and the appellate court accepted the State's concession and remanded for resentencing.

amendment to subsection (a) represented a substantive change in the law. *Id.* ¶¶ 36-37. Instead, the *Durant* court found:

> "Viewing the legislative history of both subsections (a) and (b) in light of *Stewart*, we read the 2021 amendment in Public Act 101-652 as effecting a clarification and restoration of the original meaning behind both subsections. Under our reading, the legislature originally intended that convictions for crimes under age 21 should not count toward *either* habitual criminal status under subsection (a) or Class X sentencing under subsection (b). Then, from 2016 until 2021, the legislature made subsection (a) more punitive by grafting the 'age of 18' language into the habitual criminal provision. In 2021, Public Act 101-652 restored subsections (a) and (b) to their original intended meaning, explicitly clarifying that only offenses committed after the age of 21 should count toward eligibility for habitual criminal status or Class X sentencing. This reading is consistent with *Stewart* and the legislative history of both provisions." *Id.* ¶ 37.

The *Durant* court concluded that "the 2021 amendment to the habitual criminal provision must be regarded as a clarification and restoration of the original law, such that it is not limited to prospective effect." *Id.* ¶ 38. Accordingly, it found that the requirement that predicate offenses must have been committed after age 21 applied to individuals who were sentenced as habitual criminals prior to the 2021 amendment. *Id.* In addition, as *Stewart* operated to narrow the scope of a criminal statute, the *Durant* court found that it applied retroactively to cases on collateral review, such as the case before it, and consequently vacated the defendant's life sentence and remanded for resentencing. *Id.* ¶ 40.

¶ 40    The dissent in *Durant* reached the opposite conclusion, finding that the habitual criminal provision was not ambiguous and, even if it was, the 2021 amendment was substantive and

therefore did not apply retroactively. *Id.* ¶¶ 56-57 (Lavin, J., dissenting). The dissent noted that, under the prior version of the statute, which required the *third* offense to have been committed when the defendant was at least 18 years old, a defendant who committed his third offense at the age of 18 would necessarily have been a juvenile at the time of his two earlier convictions. *Id.* ¶ 57. The dissent found that "[t]his rebuts any possible inference that the legislature merely intended to clarify the statute." *Id.* The dissent further opined that, given the "crucial" differences between the legislative history of subsections (a) and (b), the *Stewart* court's reasoning concerning subsection (b) "cannot logically be applied to the changes made to subsection (a) by Public Act 101-652." *Id.* ¶ 59. Instead, according to the dissent, "[t]he only reasonable interpretation of the changes to subsection 5-4.5-95(a) is that[ ] the legislature made a deliberate choice to substantively amend the habitual criminal statute's requirements as to the age of the offender." *Id.*

¶ 41       A different panel, with the same authoring justice, followed the reasoning of *Durant* several months later in *People v. Brown*, 2024 IL App (1st) 221859-U, *pet. for leave to appeal granted*, No. 130930, again finding that the defendant was improperly sentenced to natural life as a habitual criminal where one of the predicate convictions occurred when he was under 21 years old. The supreme court allowed the State's petition for leave to appeal in that case, and the appeal is currently pending before the supreme court, with oral argument having been held on November 12, 2025.

¶ 42       The *Durant* court's reasoning, however, was rejected by the Fifth District in *People v. Smallwood*, 2024 IL App (5th) 210407, which found the dissent's reasoning more persuasive. The *Smallwood* court noted that the supreme court in *Stewart* looked to the 2021 amendment only where it had determined that the prior version of subsection (b) was ambiguous and that

the amendment clarified that ambiguity. *Id.* ¶ 25. By contrast, the *Smallwood* court found that subsection (a) was not ambiguous, given the 2016 amendment which added the requirement that a defendant be 18 years old at the time of the third offense. *Id.* ¶ 27. It determined that "there is no ambiguity under the relevant version of section 5-4.5-95(a) as to whether an offense committed when a defendant was under the age of 18 constitutes a qualifying first or second offense under the habitual criminal statute." *Id.* As such, the plain language of the statute governed, and there was no need to look to subsequent amendments or other aids of statutory construction. *Id.*

¶ 43      The *Smallwood* court noted that, "[o]ddly," the *Durant* court did not find the 2016 version of subsection (a) to be ambiguous but, rather, found the *Stewart* analysis applicable due to the " 'incongru[ity]' " of reaching a different result than the *Stewart* court, given the identical language of the amendments. *Id.* ¶ 28 (quoting *Durant*, 2024 IL App (1st) 211190-B, ¶ 32). The *Smallwood* court, however, found that "[s]uch reasoning *** would render the legislature's 2016 amendment under Public Act 99-69 meaningless." *Id.* It instead reasoned:

> "Assuming *arguendo* that the pre-2016 version of section 5-4.5-95(a)—which was at issue in *Durant*—was ambiguous, the logic of *Stewart* still supports that Public Act 101-652 substantively changed section 5-4.5-95(a) because we would look to the legislature's subsequent amendments to resolve the ambiguity of the statute. The subsequent amendment to section 5-4.5-95(a) occurred in 2016, not 2021. Thus, under the logic of *Stewart*, Public Act 99-69 clarified that section 5-4.5-95(a) always allowed for natural life imprisonment for a defendant who committed qualifying offenses under the age of 18 as long as the defendant was 18 years of age by the third qualifying offense. While it may appear to be incongruous to find the same language in the same

act as clarification for one subsection and not another subsection, we cannot ignore the clear, unambiguous plain language of section 5-4.5-95(a) that allowed for natural life sentencing if a habitual criminal was 18 years of age at the time of the third qualifying offense before Public Act 101-652 was enacted." *Id.* ¶ 29.

Accordingly, the *Smallwood* court found that, "even if Public Act 101-652 was meant to restore the original pre-2016 intent of the legislature," as the *Durant* court concluded, the 2021 amendment substantively changed the age requirements of subsection (a) rather than clarifying them and therefore did not apply to the interpretation of the statute prior to 2021. *Id.* ¶ 30.

¶ 44      The Fourth District in *People v. Fuller*, 2025 IL App (4th) 231457, recognized the conflicting decisions on the question of the interpretation of subsection (a) in light of *Stewart*, and agreed with the position that the 2021 amendment represented a substantive change in the law which was not retroactive. The *Fuller* court found *Stewart* distinguishable, as there was no split of appellate authority regarding subsection (a) at the time of the 2021 amendment, nor was there an ambiguity for the 2021 amendment to clarify. *Id.* ¶¶ 38-39. As with the *Smallwood* court and the *Durant* dissent, the *Fuller* court found notable the fact that subsection (a) had previously been amended to impose an age requirement. *Id.* ¶ 40. The *Fuller* court thus found that, "[r]egardless of whether there was an ambiguity in subsection (a) [at the time of the defendant's sentencing in 2010], the intervening amendment in 2016 added an explicit age provision. The subsequent 2021 amendment only served to substantively change the 2016 version of the statute. Consequently, the legislature cannot have been 'clarifying' the 2010 version of the law, as it had ceased to exist five years prior to the 2021 amendment; it was no longer there to be clarified." *Id.*

¶ 45                                    *Instant Appeal*

¶ 46            Unsurprisingly, in the instant appeal, the parties contend that the case law supporting their respective interpretations of the statute is better reasoned. In other words, defendant asks us to follow *Durant* and *Brown*, while the State maintains that we should apply the reasoning of *Smallwood* and *Fuller*. After examining the language of the statute, as well as the subsequent authority from both the supreme court and the appellate courts, we agree with the State.

¶ 47            As an initial matter, we find no merit to defendant's suggestion that the State is bound by its answer to defendant's subsequent successive postconviction petition, filed after the notice of appeal in this case, in which it requested a third-stage hearing and resentencing pursuant to *Durant*. First, we observe that the State made no such request—and makes no such request— with respect to the petition which is the subject of the instant appeal. Moreover, even if we took judicial notice of the State's answer and interpreted it as a concession, such a concession would not be binding on this court. See *People v. Carter*, 2015 IL 117709, ¶ 22 ("it is well established that we, as a court of review, are not bound by a party's concession"). This is especially true where the purported concession is a question of law. See *Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076, ¶ 36 ("A party may concede a question of law, but that concession is not binding on this court."); *People v. Cotton*, 2024 IL App (4th) 230002-U, ¶ 53 ("[W]e are not bound by the State's concession to an erroneous legal conclusion.").

¶ 48            In any event, the State's answer does not contain any remarkable admission. It merely admits that (1) defendant's first predicate conviction was for an offense committed when he was under 21 years of age and (2) under *Durant*, such a conviction could not properly be used as a predicate offense for purposes of the habitual criminal statute. Both statements are

20

undisputedly true, and the State does not take a contrary position in the instant appeal. Since the date of that answer, however, the legal landscape has become more complex, as there are now a similar number of cases on each side of the analysis, as discussed above. We also observe that, as a First District case, *Durant* would have been binding on the circuit court below, while on appeal, the State is free to ask us to rely on the reasoning of cases from different districts. See, *e.g.*, *Poundstone v. Cook*, 2025 IL App (3d) 240322, ¶ 47 (while appellate panels may disagree and are not bound by other appellate decisions, a circuit court is bound by the decision of the appellate court of the district in which it sits); accord *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-40 (1992). As such, we do not find that the State's answer to the subsequent petition limits our analysis in any way.

¶ 49       To the extent that defense counsel suggests that the State's answer effectively operates to waive defenses such as *res judicata* and retroactivity with respect to the petition at issue in the instant appeal, we similarly find such an argument unpersuasive. First, defendant cites no authority for the proposition that the State's response to a subsequent pleading waived any defenses it had with respect to an earlier pleading. In addition, the State's answer did not concede that defendant's claims were not barred by *res judicata* but, at most, arguably conceded that defendant had established the requisite cause and prejudice to *overcome* the bar against the filing of successive postconviction petitions. See 725 ILCS 5/122-1, 122-3 (West 2022) (a successive postconviction petition may be filed only where the petitioner demonstrates cause and prejudice concerning his failure to raise the claim in the initial postconviction petition). Here, especially where the basis for the State's answer was a case which had not been decided at the time of the disposition of the instant petition, we cannot find

that its subsequent answer operated to waive any *res judicata* defense with respect to the petition at issue on appeal.

¶ 50     Moreover, as noted, the State's answer to the subsequent petition was based on its acceptance of binding First District authority which found that the 2021 amendment represented a clarification and not a substantive change. As such, the issue of the retroactivity—or non-retroactivity—of a substantive change in the law was simply not present and we cannot find that the State waived such an issue with respect to the instant petition.

¶ 51     Upon reviewing the statute and the applicable case law, we agree with those cases which found that the 2021 amendment represented a substantive change to subsection (a) rather than a clarification. As noted, our supreme court has explained that a statutory amendment creates a presumption that the legislature was intended to change existing law, but such a presumption is not controlling, and a reviewing court should consider the surrounding circumstances to determine whether the legislature intended merely to interpret or clarify the original law. *Stewart*, 2022 IL 126116, ¶ 20. Circumstances which could suggest that the amendment was intended as a clarification "include whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." (Internal quotation marks omitted.) *Id.*

¶ 52     Here, the legislature did not declare that it was clarifying a prior enactment, nor was there any conflict or ambiguity concerning the pre-2021 version of subsection (a). To the extent that our supreme court has suggested that the legislature's silence on a particular issue may create an ambiguity (see, *e.g.*, *Stewart*, 2022 IL 126116, ¶ 18; *People v. Marshall*, 242 Ill. 2d 285, 297 (2011)), we cannot find any such concerns present here. Moreover, any potential

22

ambiguity in earlier versions of the statute was clearly resolved by the 2016 amendment, which filled the legislature's "silence" on any question of the age of offenders eligible for sentencing under subsection (a).

¶ 53    In addition, the amendment was not consistent with a reasonable interpretation of the prior enactment and its legislative history, as it affirmatively broadened the scope of protections for young offenders beyond what had previously been expressly provided in the prior version of the statute. Thus, there is no basis for overcoming the presumption that the 2021 amendment to subsection (a) was intended to change existing law.

¶ 54    The supreme court's interpretation in *Stewart* of the 2021 amendment with respect to subsection (b) does not change that result. While we agree with the *Durant* court that it is certainly unusual to interpret identical language in two different ways, especially where the language was enacted simultaneously, that result is easily reconciled by recognizing that the statutes which were amended were not, themselves, identical prior to the amendment. Indeed, the two statutes had been wholly separate for a number of years, being codified into a single statute only in 2009, so it is unsurprising that their legislative history is also nonidentical.

¶ 55    The pre-2021 version of section 5-4.5-95(a) included an age-based element which was not included in section 5-4.5-95(b). Specifically, subsection (a) provided that "[a]nyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a)(5) (West 2018). While subsection (b) indicated that it applied to defendants "over the age of 21 years" (*id.* § 5-4.5-95(b)), it did not contain the explicit direction in subsection (a) that a defendant "having attained the age of 18 *at the time of the third offense*" (emphasis added) (*id.* § 5-4.5-95(a)(5)) would be eligible for such enhanced sentencing. Thus, the clear language of

subsection (a) contemplated that juvenile offenses could serve as predicate offenses—language which was not present in subsection (b).

¶ 56        That provision was removed by the 2021 amendment, which also added the requirement that "[t]he first offense was committed when the person was 21 years of age or older." 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022). The 2021 amendment, then, affirmatively broadened the protections available to young offenders by raising the age limit for potential predicate offenses. The fact that it did so by using the same statutory language it added to subsection (b) does not transform the character of the change with respect to subsection (a).

¶ 57        *Stewart* involved the interpretation of the requirement in subsection (b) that the offense be one " 'that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony.' " *Stewart*, 2022 IL 126116, ¶ 14 (quoting 730 ILCS 5/5-4.5-95(b) (West 2016)). The question in that case was whether, if that same offense would "now" be prosecuted in juvenile court due to the defendant's age, it could serve as a predicate offense under subsection (b). *Id.* ¶ 16. The *Stewart* court found that it could not—that the 2021 amendment made clear that offenses committed by a minor were never intended to be considered as predicate offenses for purposes of subsection (b). *Id.* ¶ 22.

¶ 58        This is inapplicable to subsection (a), however, as the pre-2021 statutory language made clear that offenses committed by a minor *could* be considered as predicate offenses. Even if, as the *Durant* court found, the 2021 amendments "restored subsections (a) and (b) to their original intended meaning" (*Durant*, 2024 IL App (1st) 211190-B, ¶ 37), that restoration constituted a change itself, albeit a change back to the "original intended meaning" (*id.*) of an

24

earlier version of the statute. This is a change, not a clarification, and as such, the 2021 amendment does not apply to defendant's case.[9]

¶ 59    We find no merit to defendant's suggestion that we should effectively disregard the 2016 amendment to subsection (a), which was made as part of a broader series of changes to criminal sentencing of juvenile offenders. Defendant contends that the legislature intended these amendments to provide greater protections to those under age 18, and they should not be interpreted to authorize life sentences for young offenders. We are not free, however, to ignore the clear statutory language enacted by the legislature. The 2016 amendment set a clear line that a defendant must be at least 18 years old at the time of the third offense in order to be sentenced as a habitual criminal. There is no way to read this language which does not lead to the conclusion that the legislature authorized the life imprisonment of defendants whose prior offenses occurred when they were younger than 18 years old.[10] To the extent that the legislature's amendment had undesirable consequences, the legislature was free to change that language—which it did, in 2021. Indeed, this highlights why it is wholly logical to find differing legislative intents behind the 2021 amendment with respect to subsections (a) and (b) despite the use of identical language. If, as the *Durant* court found, the 2021 amendment "restored subsections (a) and (b) to their original intended meaning" (*Durant*, 2024 IL App (1st) 211190-B, ¶ 37), such an amendment would constitute a clarification with respect to

---

[9] Defendant does not contend that the statute should be given retroactive effect in the event it is interpreted as a change in the law but focuses only on its effect when interpreted as a clarification of the law.

[10] We observe that even *Durant*, which defendant urges us to follow, interpreted the 2016 amendment in the same way we do, finding that "from 2016 until 2021, the legislature made subsection (a) more punitive by grafting the 'age of 18' language into the habitual criminal provision." *Durant*, 2024 IL App (1st) 211190-B, ¶ 37.

subsection (b)—which had not moved away from its original statutory language—but would be a substantive change with respect to subsection (a)—which had.

¶ 60    The 2021 amendment to subsection (a) operated to change the law, not to clarify it. Consequently, it has no impact on defendant's 1993 sentencing and does not render his sentence unconstitutional. See *Fuller*, 2025 IL App (4th) 231457, ¶ 35 (finding that the 2021 amendment to subsection (a) is not retroactive). Accordingly, the circuit court properly denied defendant leave to file his successive postconviction petition where he failed to make a *prima facie* showing of facts establishing cause and prejudice. See 725 ILCS 5/122-1(f) (West 2022); see also *Smith*, 2014 IL 115946, ¶ 35 (leave to file a successive petition should be denied when it is clear that the claims alleged by the petitioner fail as a matter of law).

¶ 61                                   CONCLUSION

¶ 62    The circuit court properly denied defendant leave to file his successive postconviction petition, where the 2021 amendments to the habitual criminal statute have no effect on defendant's 1993 sentence.

¶ 63    Affirmed.

---

*People v. Reed*, 2025 IL App (1st) 232116

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 92-CR-00094; the Hon. Domenica A. Stephenson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jonathan Yeasting, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Erin K. Slattery, and Kimberly C. Reeve, Assistant State's Attorneys, of counsel), for the People. |